UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS PICCONE and ELENA PICCONE :<br>             Plaintiffs, :<br>                       :<br>v.                                 :<br>                       :<br>ANGELO MCCLAIN, LYNNE REBER, :<br>JOAN MAZZEO, HEATHER NIETSCHE, :<br>IRENE WOODS, LANCE LAPOINTE, :<br>JANET RICE, :<br>JOHN W. BARTELS, JR., JOHN M. MARLEY,:<br>TOWN OF DALTON, and :<br>RICHARD SMITH, :<br>             Defendants. : | C.A. No.: 09-30146-KPN |

### DEFENDANT RICHARD SMITH'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

**I.     INTRODUCTION**

Richard Smith (hereinafter "Smith") hereby submits this memorandum in support of his motion to dismiss all claims against him contained in the fifty-seven (57) page complaint plaintiffs filed in the above mentioned case. In the end, notwithstanding the liberal requirements of notice pleading, the plaintiffs have not presented well-pleaded factual allegations demonstrating that they are entitled to relief. *See* Fed. R.Civ.P. 8(a)(2). As reasons for requesting dismissal as a party to this action, Smith states the following:

**II.    THE ASSERTIONS MADE IN THE COMPLAINT**

In the complaint, the plaintiff, Louis Piccone ("Mr. Piccone"), alleges that on Friday, January 11, 2008, just one week after he had discussion with the general counsel of the

-1-

Massachusetts Department of Early Education and Care ("EEC") about challenging the constitutionality of the Massachusetts law which governs the EEC, he received a call from the Department of Children and Family ("DCF") alleging that his 3 year old son made statements suggesting that he had been abused by Mr. Piccone. *See* Compl., ¶¶ 24-25. A written complaint, know as a 51A report, was later submitted regarding the allegations of abuse. *See* Compl., ¶ 26. Eventually DCF assigned social workers to investigate the allegations involving Mr. Piccone. *See* Compl., ¶ 36. Two DCF workers went to the Piccone's home on January 11, 2008 at approximately 8:30 p.m. accompanied by two Dalton Police Officer. *See* Compl., ¶ 38. The DCF workers explained the allegations to Mr. Piccone, which he adamantly denied. *See* Compl., ¶¶ 43, 44. The DCF workers desired to interview Mr. Piccone's children, but Mr. Piccone insisted that the interview be video recorded, to which DCF would not agree. *See* Compl., ¶¶ 53,-54. Eventually, on January 16, 2008, DCF workers conferred and at approximately 3:00 p.m. that day DCF filed an ex parte emergency care and protection petition with the Massachusetts Juvenile Court. *See* Compl., ¶ 95.

On January 17, 2008, two Dalton police officers and two DCF social workers arrived at the Piccone home with a notice that DCF had filed a care and protection in the Juvenile Court and there would be a hearing the next day, which they served upon Mr. Piccone. *See* Compl., ¶¶ 103, 106. The complaint goes on for several pages about illegal searches by the Dalton Police between January 25, 2008 and Thursday January 31, 2008, in their attempt to locate the Piccone's children, but there are no references to Smith contained in this portion of the complaint. *See* Compl. Generally. Then, on or around January 29, 2008, DCF shared all of its information with the Dalton Police and Berkshire County District Attorney's Office. *See* Compl.,

¶ 134. This same day Defendant Bartels applied for and received criminal complaints and arrest warrants for three counts of parental kidnaping against Mr. and Mrs. Piccone. *See* Compl., ¶ 135. The Central Bershire District Court issued the arrest warrants for Mr. and Mrs. Piccone, charging them with felony violation of General Law Ch. 265, sec. 26A, Kidnaping of a Minor by a Relative. *See* Affidavit of Chief John Bartels, Jr., ¶ 7 ("Bartels Affidavit ¶ __") Attached hereto as Exhibit 1.[1] These arrest warrants were subsequently entered into NCIC with rendition authorized by the Berkshire County District Attorney's Office from states east of the Mississippi River. *See* Bartels Affidavit, ¶ 7. On or about February 6, 2008, DCF concluded its investigation regarding Mr. and Mrs. Piccone. *See* Compl., ¶ 155. Although DCF concluded that there was insufficient evidence to make a finding regarding the original allegations of abuse and neglect, it did conclude that allegations of neglect were supported against Mr. and Mrs. Piccone based on their failure to make the children available to DCF. *See* Compl., ¶¶ 156-57.

On February 12, 2008, Mr. Piccone arrived at Logan International Airport from Paris, France aware that the parental kidnaping charges had been brought against him. *See* Compl., ¶¶ 161-62. Federal Immigration and Custom Enforcement ("ICE") agents took Mr. Piccone into custody and then contacted Defendant Chief Bartels of the Dalton Police Department. *See*

---

[1] Although it is generally inappropriate to consider material outside the complaint in a Rule 12(b)(6) context, there is a narrow exception for documents the authenticity of which are not disputed by the parities; for official public records; for documents central to plaintiffs claim; or for documents sufficiently referred to in the complaint. *Jonker v. Kelley,* 268 F.Supp.2d 81, 84 (D.Mass 2003), quoting *Alternative Energy, Inc. V. St Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). Also *See Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) (noting that on a motion to dismiss, the court can consider "facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss."). Here, Chief Bartels' affidavit for one of the search warrants that plaintiffs' reference in their complaint meets this narrow exception. Chief Bartels' Affidavit has been redacted pursuant to LR, D.Mass. 5.3.

Compl., ¶ 163. Chief Bartels confirmed the arrest warrant for Mr. Piccone and made arrangements for the Massachusetts State Police at Logan Airport to take custody of Mr. Piccone and his belongings from Federal Authorities. *See* Bartels Affidavit ¶¶ 9, 13. Mr. Piccone was held without bail until the following morning when he appeared in East Boston District Court on the warrant and held by that court to be transported to the Cental Berkshire District Court to answer the parental kidnaping charges. *Id.* On February 15, 2008 Mr. Piccone was transported back to the Berkshire County Jail where he was held for at least 30 days before being released. *See* Compl., ¶¶ 165, 167-68.

On February 29, 2008, defendant Smith, a Massachusetts State Police detective lieutenant, traveled to Boston to take custody of a suitcase that Mr. Piccone had with him when he arrived at Logan International Airport on February 12. *See* Compl., ¶ 169. Smith went to the State Police barracks located at Logan International Airport and took possession of Mr. Piccone's luggage which had been secured at the time of his arrest by ICE agents. *See* Bartels Affidavit ¶ 14. Smith brought the suitcase to the Dalton Police Department where it remained until, on or about March 13, 2008, Chief Bartels applied for and received a search warrant for Mr. Piccone's luggage. *See* Compl., ¶ 171. The subsequent search of Mr. Piccone's luggage revealed no evidence relevant to the criminal charges against Mr. Piconne. *See* Compl., ¶ 175.

### III.   STANDARD OF REVIEW

The travel begins with the appropriate lens through which this dispositive request is to be viewed. Rule 12 (b) (6) of the Federal Rules of Civil Procedure authorizes the dismissal of actions which "fail to state a claim upon which relief may be granted." In evaluating such a

motion, testing the legal sufficiency of the pleading, the complaint is to be construed in the light most favorable to the plaintiff, meaning all well-pleaded allegations are to be taken as true and that the plaintiff is conferred with the benefit of all reasonable inferences that may be drawn from such allegations. *See Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir. 1999); *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998).

Through recent decisions, additional judicial gloss has been placed upon this standard by the United States Supreme Court, as well as by lower federal courts, including the First Circuit Court of Appeals. More specifically, it has been made clear that in order for a matter to survive a motion to dismiss advanced pursuant to Fed.R.Civ.P. 12 (b) (6), the factual allegations contained in the operative pleading must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 (citations omitted). Put differently, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .[This standard] asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted).

Very recently, the United States Supreme Court had occasion to expound further upon

this standard of review in *Ashcroft*. There, building upon its 2007 decision in *Twombly*, the Supreme Court made clear that the pleading standard constructed by Fed.R.Civ.P. 8 (a) (2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . .[and a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. . . ." *Ashcroft*, ___ U.S. at ___, 129 S.Ct. at 1949 (internal citations, punctuation and quotation marks omitted).

*Ashcroft* also identified what were described as the two "working principles" that undergirded the decision in *Twombly*. *Id.* These principles functionally amount to a two step progression that a reviewing court is to engage in when considering a challenge to the viability of a complaint. The first step of the progression is a task of excision: because, in the context of a motion to dismiss, only well-pleaded factual allegations are to be taken as true and not subject to contestation, a court properly should remove from the analysis any legal conclusions, including those couched as factual assertions, as well as any threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.* at 1949-50 (citations omitted).[2] This stage of the progression is largely consistent with Circuit precedent that predates *Ashcroft* and *Twombly*. *See Edsall v. Assumption College*, 367 F.Supp.2d 72, 76 (D.Mass.2005) (citing

---

[2]For example, the *Ashcroft* Court described as conclusory and "not entitled to be assumed true" the allegations that certain defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]" to improper treatment "as a matter of policy, solely on account of [the plaintiff's] religion, race, and/or national origin and for no legitimate penological interest." *Id.*, 1951 (citations omitted). The Court similarly refused to consider, without further factual enhancement, the allegations that a particular defendant was the "principal architect" of the policy while another defendant was "instrumental" in its adoption and implementation. *Id.* (citations omitted).

-6-

*Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004)) (a court "may not uphold a complaint based solely on 'bald assertions, unsupportable conclusions, and opprobrious epithets.'"); *see also Jones v. City of Boston*, 135 Fed.Appx. 439, 2005 WL 1389966 (1st Cir. June 14, 2005) (unpublished opinion) (affirming dismissal of malicious prosecution claims, in part, upon the complaint's "oblique contention[s]" alleging malicious prosecution).

Turning to the second stage of the progression, a reviewing court is to engage in a "context-specific task" that requires "draw[ing] on its judicial experience and common sense" in order to analyze the well-pleaded factual assertions and to consider whether the complaint sets forth a plausible claim for relief. *Id.*, 1950 (citations omitted). If the complaint does no more than lead to an inference of the *possibility* of misconduct, it has failed to state a claim and is subject to dismissal. *Id.* (citations omitted).[3] The standard cast, a review of the plaintiff's claims against Smith may follow.

## IV. ARGUMENT

Deriving from that predicate of allegation, the complaint seeks to advance two causes of action against Smith, as well as the other individually named defendants, namely, a claim brought pursuant to 42 U.S.C. § 1983 for alleged violations of the plaintiff's Fourth Amendment rights, as incorporated through the fourteenth amendment, to be free from unreasonable seizure (Count VII) and a related state claim, alleging the same constitutional deprivations, brought pursuant to the Massachusetts Civil Rights Act, G.L. c. 12, §§ 11H-I (Count VIII). *See* Compl.,

---

[3] This two step progression is precisely the analysis engaged in by the *Ashcroft* Court. *See id.*, 1951-52.

¶¶ 225-34.

### A.     The Complaint Fails to State a Claim Against Smith

As to Smith, the complaint fails to set forth a "plausible entitlement to relief" and should be dismissed. *See Gagliardi*, 513 F.3d at 305 (citations omitted). In fact, not only does the complaint fail to "possess enough heft" in its factual averments concerning Smith to survive challenge at this stage, but the admissions and accusations thus far made by the plaintiffs through their operative pleading demonstrate conclusively that the claims against Smith are not viable as a matter of law. In other words, in attempting to set out information related to the critical litigation inquiries of "who did what to whom, when, where, and why"; *Educadores Puertorriquenos en Accion*, 367 F.3d at 68 (1st Cir. 2004); the plaintiffs have asserted plainly that other people or entities, and not Smith, are responsible for what they have characterized as their constitutional harms.

### 1.     Plaintiffs' fails to allege any facts to show that they are entitled to relief from Smith for their §1983 claim.

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right. *Colon-Andino v. Toledo-Davila*, 634 F.Supp.2d 220, 231, (D.Puerto Rico. 2009) *citing Omni Behavioral Health v. Miller*, 285 F.3d 646, 650-51 (8th Cir.2002). In considering the plaintiff's § 1983 claim, this Court is to adhere to federal interpretation of the statutory construct. *See Howlett v. Rose*, 496 U.S. 356, 376 (1990). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94

(1989) (citation and internal quotations omitted). In order to sustain such a claim, a plaintiff must satisfy two elements: demonstrating first that the challenged conduct was taken by a person acting under color of state law and second that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997), cert. denied, 522 U.S. 819 (1997). Here, there is no dispute as to the first element and the inquiry turns to the second.

To begin, consistent with the progression articulated in *Ashcroft*, this Court should begin by pruning those portions of the complaint, to the extent that they are employed to demonstrate the viability of claims, that amount to no more than threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Ashcroft*, 129 S.Ct. at 1949-50. Here, those sections of the complaint are contained within the causes of action and specifically in Paragraphs 225 through 229 alleging that the actions described earlier in the pleading constitute a deprivation of the plaintiff's Fourth Amendment constitutional rights by Smith's warrantless seizure of Mr. Piccone's luggage without consent and in the absence of exigent circumstances. See Compl. ¶¶225-227. These statements amount to mere "formulaic recitation of the elements" or legal conclusions devoid of factual enhancement and, as such, should not be considered in the analysis. *See Twombly*, 550 U.S. at 554-55

Once that task is completed, as discussed previously in this memorandum, the only other substantive occasion on which Smith's name appears in the complaint is in Paragraph One Hundred and Sixty Nine which asserts that Smith on February 29, 2008, traveled to Boston to take custody of a piece of luggage that Mr. Piccone had with him when he arrived at Logan International Airport on February 12. *See* Compl., ¶ 169. In its essence, the complaint against

Smith is that he transferred custody of Piccone's luggage from the State Police barracks at Logan Airport to the Dalton Police Department while Piccone was in jail.

The Fourth Amendment protects "the right of people to be secure in their person, houses, papers, and effects against unreasonable searches and seizures. *Florida v. Rodirquez*, 469 U.S. 1, 105, 105 S.Ct. 208, 310-11 (1984). A "seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1985). Here, the seizure occurred upon Mr. Piccone's arrest for parental kidnaping. When the ICE agents arrested Mr. Piccone on the warrant they seized his luggage and subsequently turned it over to the Massachusetts State Police Troopers at Logan airport. See Compl. ¶ 163; Bartels affidavit ¶ 9. Smith traveled to the Massachusetts State Police barracks located at Logan International Airport to take possession of that luggage. *See* Bartels Affidavit ¶ 14. Smith then transported the luggage to the Dalton Police Department and turned it over to Dispatcher B. Taglieri who gave it to Officer John Marley who logged the luggage under the arrest report and placed it in a locked evidence locker in the Dalton Police Department property room. *Id.* The securing of the luggage upon Mr. Piccone's arrest created the seizure because it was at that point in time that Mr. Piccone's possessory or ownership interest was interfered with. *See United States v. Osorio de Santiago*, 626 F.Supp. 329, 334 (D. Puerto Rico 1986). When Smith picked up the luggage for the purpose of transporting it to Dalton as evidence, Mr. Piccone was in custody and being held on bail. See Compl. ¶¶ 166-67. Thus, a "meaningful interference" with Mr. Piccone's possessory interest in the luggage had already occurred before Smith picked up and transported the luggage, negating any claim that Smith seized the luggage in violation of Mr. Piccone's constitutional rights.

Even assuming that Smith's transportation of the luggage from the State Police Barrack at Logan Airport to the Dalton Police Department was a seizure, the luggage was properly seized and Mr. Piccone's Fourth Amendment rights were not violated by Smith. A law enforcement officer may seize property if he has reasonable, articulable suspicion that the property contains contraband or evidence of a crime. See *United States v. Place*, 462 U.S. 696, 706, (1983); Also See *United States v. Davis*, 638 F.Supp. 472, 477 (D.Mass 1986). Since Mr. Piccone was taken into custody and arrested on an arrest warrant obtained by the Dalton Police Department, the seizure of the luggage was warranted as it was incidental to his arrest. The luggage was in plain sight and there was a "fair probability that the contents of the luggage may be useful as evidence of a crime" due to the nature of the criminal charges in this circumstance. *United States v. Osorio de Santiago*, 626 F.Supp. 329, 334 (D. Puerto Rico 1986), *citing Texas v. Brown*, 460 U.S. 730, 742 (1983). "[I]t is difficult to perceive what is unreasonable about the police's examination and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest. *Barry v. Ficco*, 392 F. Supp.2d 83, 95 (D.Mass. 2005) *citing United States v. Edwards,* 415 U.S. 800, 806 (1974). Under the circumstances presented in this case one would be hard pressed to argue that the officers did not have reasonable, articulable suspicion that the luggage could contain contraband or evidence to support the parental kidnaping charges at the time. Therefore, Smith's transportation of the luggage from the Massachusetts State Police Barracks at Logan Airport to the Dalton Police Department did not violate Mr. Piccone's Fourth Amendment rights.

### 2. Plaintiffs' claims against Smith pursuant to M.G.L. ch. 12, § 11I must be dismissed.

In relevant part, M.G.L. ch. 12, § 11I provides: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H,[4] may institute and prosecute in his own name and on his own behalf a civil action . . . ." Accordingly, in order to sustain their MCRA claim, the Plaintiffs must allege that Smith used "threats, intimidation, or coercion" to interfere, or to attempt to interfere, with the Plaintiffs' exercise of rights secured by either federal or state law; M.G.L. ch. 12, §§ 11H-I; *Brum v. Town of Dartmouth*, 428 Mass. 684 (1999).

The MCRA, providing a civil remedy for any person who has had her exercise or enjoyment of rights secured by federal or state law interfered with, or attempted to be interfered with, is a remedial statutory scheme and, as such, "is entitled to liberal construction of its terms." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822 (1985). Although liberally construed, this Court also must be mindful that the Massachusetts Legislature did not intend the MCRA to create a "vast constitutional tort"; *Bally v. Northeastern Univ.*, 403 Mass. 713, 718 (1989); and that legislative insertion of the "requirement of threats, intimidation or coercion was specifically intended to limit liability under the [MCRA]." *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 565-66, *cert. denied* 516 U.S. 931 (1995); *see also Longval v. Comm'r of Correction*, 404 Mass. 325 (1989). As a further limit to the statutory reach of the MCRA, the determination

---

[4]In turn, M.G.L. ch. 12, § 11H expressly proscribes any person, regardless as to whether she is acting under color of law, from interfering, or attempting to interfere, with one's exercise or enjoyment of federal or state rights by means of "threats, intimidation or coercion."

-12-

as to whether particular conduct is to be considered threatening, intimidating or coercive is to be made pursuant to an objective standard. *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass.App.Ct. 86 (1999), *review denied* 430 Mass. 1106.

Providing content to these operative statutory terms, the Supreme Judicial Court has stated, for purposes of MCRA claims, that a:

> 'Threat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. ['Coercion' is] 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'

*Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474 (1994) (citations omitted). Given the character of these definitions, violations of the MCRA generally are to be found in instances involving "actual or potential physical confrontation accompanied by a threat of harm. . . ." *Id.*, 473; *see also Bally v. Northeastern Univ.*, 403 Mass. at 719-20 (collecting cases).

As the analysis goes for the plaintiff's federal civil rights claim, the analysis similarly proceeds as to the plaintiff's state civil rights claim. If anything, the dismissal of Smith as a defending party to the state civil rights claim is made all the more necessary and appropriate because that cause of action requires that a deprivation be attended by "threats, intimidation or coercion." G.L. c. 12, § 11H. The plaintiffs have failed to recite in any single portion of the pleading that Smith engaged in any behavior that could, by any stretch of the language, be considered threatening, intimidating or coercive and as such their claim against Smith must fail.

**B.     Smith is Entitled to Qualified Immunity.**

Although it is the firm position of Smith that his actions did not violate Mr. Piccone's Fourth Amendment rights by transporting the luggage, should this Court disagree, Smith would still be entitled to qualified immunity. "[T]he qualified immunity inquiry is a two-part test. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009) (citations omitted). As to the second stage of the progression, there are two aspects, the first focused "on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . . The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights. . . . Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted'. . . . [and] whether [the defendant had] fair warning that his particular conduct was unconstitutional." *Id.*, 568 F.3d at 269 (citations omitted).

Immunity applies if "a reasonable officer could have believed [that the challenged conduct was] lawful, in light of clearly established law and the information the officer [] possessed." *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 186 (1st Cir. 1998) (citations omitted). This immunity extends "so broadly that 'all but the plainly incompetent or those who

-14-

knowingly violate the law'" are covered. *Hegarty v. Somerset County*, 53 F.3d 1367, 1373 (1st Cir. 1995) (citations omitted). In large measure, this Court may take guidance from the decision in *Illinois v. Lafayette*, 462 U.S. 640 (1983) where the United State Supreme Court was faced with the question whether, consistent with the Fourth Amendment, it was reasonable for police to search the personal effects of person under lawful arrest. The case involved an individual arrested for disturbing the peace who was carrying a purse type shoulder bag that police removed and inventoried. *Id.* The court in *Lafayette* found that a person under lawful arrest, who is to be jailed, granted the police authority not only to search his person but also to take property in a person's possession and keep it in official custody. *Id.* at 645-46, *quoting United State v. Edwards*, 415 U.S. 800, 804 (1974). Any reasonable officer in Smith's position, in light of the court's decision in *Lafayette*, would believe his actions to be lawful.

Therefore, in light of the facts surrounding Smith's transportation of the luggage at the time, there is simply no question but that any officer in Smith's position would not know that it was unlawful to transport property seized during an arrest from one custodian to another. In support of this conclusion, counsel has researched the issue of an officer transporting previously seized property and was unable to find a case on point clearly establishing that under the facts of this case a reasonable person in Smith's position would be on notice that such conduct was a violation of the Fourth Amendment. As such, for the reasons discussed earlier and based upon the record appended to this memorandum, this Court should conclude that qualified immunity attaches and enter judgment in favor of Smith.

## V. CONCLUSION

WHEREFORE, for the reasons discussed, Richard Smith requests that he be dismissed as a party to this litigation.

DEFENDANT RICHARD SMITH,
By his attorneys,

/s/ John K. Vigliotti
Austin M. Joyce
BBO#: 255040
John K. Vigliotti
BBO #: 642337
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, Massachusetts 01609
508.754.7285
