UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:09-CV-30146 (KPN)

| | | |
|---|---|---|
| LOUIS PICCONE and ELENA PICCONE, | ) | |
|     Plaintiffs | ) | |
| | ) | |
| vs. | ) | LEAVE TO FILE EXCESS |
| | ) | PAGES GRANTED |
| ANGELO MCCLAIN, LYNNE REBER, | ) | NOVEMBER 10, 2009 |
| JOAN MAZZEO, HEATHER NIETSCHE, | ) | |
| IRENE WOODS, LANCE LAPOINTE | ) | |
| JANET RICE, JOHN W. BARTELS, JR., | ) | |
| JOHN M. MARLEY, TOWN OF DALTON and | ) | |
| RICHARD SMITH, | ) | |
|     Defendants | ) | |

DEFENDANTS, JOHN W. BARTELS, JR., JOHN M. MARLEY
AND TOWN OF DALTON'S, MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS

INTRODUCTION

The plaintiffs, Louis Piccone ("Mr. Piccone") and Elena Piccone ("Mrs. Piccone"),

became the subjects of an investigation by the Massachusetts Department of Children & Families

("DCF")[1] in early 2008.  During the course of this investigation and related Juvenile Court

proceedings, custody of the Piccones' children was transferred to DCF by the Juvenile Court.

However, the plaintiffs failed to comply with the Juvenile Court's order transferring custody of

the Piccones' children to DCF.  Defendant, John W. Bartels, Jr. ("Chief Bartels"), investigated

and sought criminal charges against the Piccones for parental kidnapping in violation of M.G.L.

c. 265, § 26A.

The plaintiffs have brought claims pursuant to 42 U.S.C. § 1983 and M.G.L. c. 12, § 11I

as against defendants, Chief Bartels, Dalton Police Officer John M. Marley ("Officer Marley")

---

[1] Until July 8, 2008, DCF was known as the Department of Social Services.  See Complaint and Jury Demand at n.1.

and the Town of Dalton ("Dalton"). As set forth below, the Plaintiffs' Complaint and Jury Demand ("Complaint") fails to state claims against Chief Bartels, Officer Marley and Dalton upon which relief can be granted and, therefore, the Complaint should be dismissed as against them.

## FACTS

Solely for the purposes of the instant motion, the defendants accept as true the facts, as opposed to conclusions, as set forth in plaintiffs' Complaint as true.

## STANDARD OF REVIEW

The Supreme Court of the United States has recently confirmed the standard of review of a motion to dismiss announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S. Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S. Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

## ARGUMENT

A.    <u>The Doctrine of Collateral Estoppel Bars Mr. Piccone's Claims to the Extent He
Alleges that the Pittsfield Juvenile Court's Order Granting Custody to DCF was
Invalid and to the Extent that He Alleges that the Criminal Complaint Sought by
Chief Bartels Does Not Rest on Probable Cause.</u>

The doctrine of collateral estoppel, also known as issue preclusion, bars Mr. Piccone's

claims, in part.   First, the doctrine applies to claims brought pursuant to 42 U.S.C. § 1983.

Johnson v. Mahoney, 424 F.3d 83, 93 (1st Cir. 2005).  "Federal courts must give to state court

judgments the same preclusive effect as would be given by the courts of the state from which the

judgments emerged."  Id. (citations omitted).  "The doctrine of issue preclusion provides that

when an issue has been actually litigated and determined by a valid and final judgment, and the

determination is essential to the judgment, the determination is conclusive in the subsequent

action between the parties whether on the same or different claim."  Jarosz v. Palmer, 436 Mass.

526, 531 (2002) (internal quotation marks omitted; citations omitted).

Mr. Piccone may not attempt to re-litigate in this action issues that were litigated and

decided in the related criminal matter in which he was a defendant.  See Aetna Cas. & Sur. Co. v.

Niziolek, 395 Mass. 737, 742 (1985) ("[A] party to a civil action against a former criminal

defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from

relitigating an issue decided in the criminal prosecution").  See also, Johnson, 424 F.3d at 93

("As applied in the present context, Massachusetts courts have abandoned the requirement of

mutuality"), quoting, Id.

As indicated in the Complaint, Mr. Piccone was charged with and prosecuted for

violation of M.G.L. c. 265, § 26A.  In connection with his criminal prosecution, the plaintiff filed

both a motion to dismiss and a motion for reconsideration.  In his motion to dismiss, Mr. Piccone

argued:

> (1)     the Department of Social Services ('DSS') was not the 'lawful custodian' of his children at the time of the alleged custodial interference and (2) the Dalton Police Department, in its application for a criminal complaint, presented no evidence that the defendant himself, or in concert with his wife, 'held' his children after DSS obtained their custody.

Memorandum and Order on Defendant's Motion to Dismiss, Commonwealth v. Piccone, Commonwealth of Massachusetts, District Court Department of the Trial Court, Pittsfield District Court, Docket No. 0827CR215, attached hereto as Exhibit A.[2]  According to the Pittsfield District Court:

> The narrow issue presented by the defendant's motion regarding probable cause for the third element is whether the custody order issued by the Juvenile Court on January 16, 2008 was invalid, that it was unlawful, because the Pittsfield Juvenile Court was not the appropriate "venue" to consider the department's request for custody under G.L. c. 119, § 24.  The defendant argues that that since his children "had lawfully left the Commonwealth of Massachusetts, with their mother, before any court proceeding was initiated and before [DSS] was awarded temporary custody of the children" . . . the Pittsfield Juvenile Court had no authority to issue its order.

Exhibit A at p. 8.  This argument is substantively identical to the assertions made in the Complaint regarding the validity of the Juvenile Court's custody order.  See e.g., Complaint at ¶ 136(g).  The District Court rejected this position:

> The court rules as a matter of law that defendant's children were "within the jurisdiction" of the Pittsfield Juvenile Court on January 16, 2008, even if they happened physically to be in New York at the moment the petition was filed . . . When the petition was filed there was no evidence that the Piccone family intended to change its domicile from Dalton to one in New York State or any other jurisdiction.  It was reasonable to assume that the children would return to their home in Dalton after visiting relatives in New York, especially since their father remained in Massachusetts.  There is no evidence that their visit to New York, even if known to DSS and the police, was intended to be anything other [than] a brief family trip.

Id. at p. 11.

---

[2] Defendants respectfully request that this Court take judicial notice of the copies of the Pittsfield District Court's decisions attached hereto as Exhibits A and B.  See In re: Colonial Mortgage Bankers Corp. v. Lopez-Stubbe, 324 F.3d 12, 15-16 (1st Cir. 2003) ("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion"), quoting, Boatangteng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000).

Mr. Piccone also moved for reconsideration of the District Court's denial of his motion to dismiss. Despite its title, the Pittsfield District Court's Memorandum of Decision and Orders on Defendants' Motion for Reconsideration, did not overrule its earlier decision. As noted by the Pittsfield District Court, the original July 25, 2008, order held that the Statement of Facts in Support of Application for Criminal Complaint ("Statement of Facts") filed on January 29, 2008, by Chief Bartels provided probable cause to charge Mr. Piccone with violation of M.G.L. c. 265, § 26A and that the complaint that issued against him was valid. See Memorandum of Decision and Orders on Defendant's Motion For Reconsideration, Commonwealth v. Piccone, Commonwealth of Massachusetts, District Court Department of the Trial Court, Pittsfield District Court, Docket No. 0827CR215, attached hereto as Exhibit B, at p. 3. The court's second order was founded on a review of the contemplated evidence to determine whether the Commonwealth could meet its burden of proof at trial. See Id.

> In allowing Defendant's Motion for Reconsideration, the District Court stated:

> This court's present ruling is not legally inconsistent with its earlier ruling that the complaint against the defendant properly issued upon a finding of probable cause. The Statement of Facts filed by the Dalton Police Department and reviewed by the Assistant Clerk Magistrate provided enough evidence to meet the lesser [standard] of probable cause to charge the defendant. However, the contemplated evidence, developed over the ensuing months, establishes that the case against the defendant cannot be proven at trial by the greater standard of proof beyond a reasonable doubt.

> Taken as a whole and evaluated in a common sense fashion, as is required in a probable cause determination, the facts permit a reasonable inference that after January 17, 2008, the defendant "held" (as previously defined by the Court) his children in New York (and perhaps in some other unknown location) contrary to the rights of DSS. At the very least, there is probable cause that the defendant "held" his children contrary to the right of DSS when he refused to comply with the Juvenile Court order that he surrender them to its custody no later than 4:00 p.m. on January 23, 2008.

Exhibit B at p. 7, n.6.

Therefore, the doctrine of collateral estoppel precludes Mr. Piccone from re-litigating the issues of whether Chief Bartels' Statement of Facts provided probable cause for the issuance of a criminal complaint and whether custody of plaintiff's children had been validly transferred to the DCF by the juvenile court.

B.    Count I:  "Plaintiffs Mr. and Mrs. Piccone Against Defendant Bartels (42 U.S.C. § 1983 – Fourth Amendment to the U.S. Constitution)".

Count I of the Complaint alleges "On January 25, 2008, Defendant Bartels violated Mr. and Mrs. Piccone's clearly established Fourth Amendment rights by conducting a warrantless search of the Piccone's home without consent and in the absence of exigent circumstances." Complaint at ¶ 197.

On January 24, 2008, the Dalton Police Department received a capias warrant from Berkshire Juvenile Court for Mr. Piccone for failure to appear.  See Statement of Facts in Support of Application for Criminal Complaint, John Bartels, January 29, 2008, attached hereto as Exhibit C at p. 2 of 5.[3]  Multiple attempts to serve the capias warrant were unsuccessful.  See Id.  See also, Chief John W. Bartels, Jr., Dalton Police Department, Affidavit in Support of a Search Warrant ("Affidavit"), attached hereto as Exhibit D, at p. 2.  On January 25, 2008 three writs of habeas corpus were issued directing that the three Piccone children be placed in custody and brought to the court.  See Id.  Again, several attempts to carry out the writs were made without success.  Id.

---

[3] The defendants submit that Exhibits C and D are sufficiently referred to and relied upon in the Complaint that this Court may consider them in deciding the instant motion pursuant to Fed. R. Civ. P. 12(b)(6).  See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007), and cases cited.  "When, as now, a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document offered by the movement (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it."  Id., quoting, Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal quotation marks and brackets omitted; further citations omitted).

1.     <u>The Doctrine of Qualified Immunity Bars the Imposition of Liability</u>.

Qualified immunity is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive.  See, Saucier v. Katz, 533 U.S. 194, 200 (2001).  "Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.'"  Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815 (2009), quoting, Anderson v. Creighton, 483 U.S. 635, 640, n.2 (1987).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct."  McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991).  This qualified immunity standard leaves "ample room for mistaken judgments."  Malley v. Briggs, 475 U.S. 335, 343 (1986).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed

questions of law and fact.'"  Pearson, 129 S. Ct. at 815, quoting, Groh v. Ramirez, 540 U.S. 551, 567, (2004) (Kennedy, J., dissenting) (further citation omitted).  If no constitutional right is violated, a defendant is entitled to qualified immunity as a matter of law.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Following Pearson, supra, the First Circuit abandoned its former three-part qualified immunity analysis and has adopted the two-part test articulated in Saucier and Pearson. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  "A court must decide:  (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. at 268.  But see, Id. (explaining that the "clearly established" step has two aspects).  As explained by Pearson and Maldonado, it is also now permissible to avoid the first step of the analysis in appropriate cases.  Pearson, 129 S. Ct. at 816-819; Maldonado, 568 F.3d at 269-270.

The defendants submit that, as to Count I, it is appropriate to begin the qualified immunity analysis at step two of the Saucier test; the alleged right was not "clearly established" at the time of the defendants' alleged violation.  Count I is grounded in the plaintiffs' allegations that their Fourth Amendment rights were violated by the warrantless search of their home.  See Complaint at ¶ 197.

In Payton v. New York, 445 U.S. 573 (1980), the Supreme Court of the United States held that the Fourth Amendment is violated when police enter into a suspect's home without a warrant to make a routine felony arrest.  The Court also held, however, that a criminal arrest warrant authorizes the entry into a person's home to effect his arrest.  Id. at 602-603.

The Supreme Court has never determined whether a capias warrant authorizes the non-consensual entry into a home to make an arrest.  However, in Pembaur v. City of Cincinnati, 475

U.S. 469 (1986), the Court treated the capias warrants at issue as any other arrest warrant and held that entry onto a third party's premises in order to effect a capias warrant violated the Fourth Amendment, following Steagald v. United States, 451 U.S. 204 (1981). The Court did not discuss whether the capias warrants authorized entry into the homes of the two witnesses named in the capias warrants. See Id. at 471-474.

The United States Court of Appeals for the First Circuit has only addressed this issue in one unpublished disposition, in Malek v. Knightly, 56 F.3d 59, 1995 WL 338178 (1st Cir. 1995). The plaintiff in Malek alleged that deputy sheriffs entered his home without his consent and arrested him pursuant to a capias warrant. Id. at *1. Before the First Circuit, the plaintiff argued that a capias is not a warrant and that he stated a claim against the individual defendants pursuant to the Fourth Amendment based on their entry into his home without a warrant. Id. at *2. The First Circuit stated:

> The issue, as we see it, is whether a bench warrant for civil contempt authorizes entry into the arrestee's home to affect the arrest. This latter issue has received surprisingly little discussion in the case law, and we have found no Massachusetts or federal cases directly on point. Because the issue was inadequately briefed, we do not resolve it here. Given the dearth of relevant case law, we cannot say that Knightly or Cote (or more precisely, an objectively reasonable police office (sic) in their position) knew or should have know that their actions violated appellant's Fourth Amendment rights, if, in fact, they did. See Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (Powell, J.) (observing that in determining whether the plaintiff has asserted a violation of a clearly established right, "'the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.'"), quoting, Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

Id. at *2.

The defendants have found no decision from the First Circuit or Massachusetts following the First Circuit's decision in Malek that resolves the issue of whether a capias warrant authorizes the entry into an arrestee's home to affect the arrest. Therefore, as the state of the law

remains unclear, the alleged right, if any, was not clearly established as of January 25, 2008, and Chief Bartels is entitled to qualified immunity as to Count I.

C.  **Count II: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Bartels (Mass. Gen. Laws ch. 12, § 11I – Article 14 of the Massachusetts Declaration of Rights)."**

Count II of the Complaint seeks to impose liability as against Chief Bartels pursuant to M.G.L. c. 12, § 11I based on the same conduct alleged in Count I, i.e. the alleged warrantless search of January 25, 2008.  See Complaint at ¶¶ 202, 212.

1.  **The Complaint Does Not Allege a Violation of M.G.L. c. 12, § 11I Upon Which Relief Can Be Granted.**

In order to support a claim under M.G.L. c. 12, § 11I, each plaintiff bears the burden of proving that:  "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"  Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989).

M.G.L. c. 12, § 11I was enacted to provide a remedy co-extensive with 42 U.S.C. § 1983 with the exception of the state action requirement.  See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-823 (1985).  It "was not intended to create a 'vast constitutional tort' ...." Haufler v. Zotos, 446 Mass. 489, 504-505 (2006), quoting, Bell v. Mazza, 394 Mass. 176, 182 (1985).

Perhaps the most significant difference between claims brought pursuant to M.G.L. c. 12, § 11I and 42 U.S.C. § 1983, is the unique requirement, pursuant to c. 12, § 11I, that the civil rights violation occur by way of "threats, intimidation, or coercion."  "Threat" has been held to "involve the intentional exertion of pressure to make another fear or apprehensive of injury or harm."  Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994).

"Intimidation" has been defined as the creation of fear to compel conduct, and "coercion" to be the active domination of another's will.  Id.  See also, Dean v. Dempsey, 403 Mass. 468 (1988).

The plaintiffs have alleged direct deprivations of their rights; an action not cognizable under M.G.L. c. 12, § 11I.  "Not every violation of law is a violation of the state Civil Rights Act.  A direct violation of a person's right does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act."  Longval v. Commissioner of Correction, 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989), citing, Pheasant Ridge Assoscs. Limited Partnership v. Burlington, 399 Mass. 771, 781, 506 N.E.2d 1152 (1987).  See Id. ("[W]e see no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action").  Due to plaintiffs' failure to allege facts to support an inference that the alleged deprivations of their rights involved threats, intimidation or coercion, Count II of the Complaint should be dismissed.

2.    The Doctrine of Qualified Immunity Precludes the Imposition of Liability.

The qualified immunity analysis under M.G.L. c. 12, § 11I is the same as that under 42 U.S.C. § 1983.  See Rodriguez v. Furtado, 410 Mass. 878, 881, 885 (1991).  As set forth above, Chief Bartels is entitled to qualified immunity as to Count II.

D.    Count III: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Marley (42 U.S.C. § 1983 – Fourth Amendment to the U.S. Constitution)."

Count III of the Complaint alleges:

207.    On January 27, 2008, Defendant Marley violated Mr. & Mrs. Piccones' clearly established Fourth Amendment rights by conducting a warrantless search of the Piccone's home without consent and in the absence of exigent circumstances.

Complaint at ¶ 207.  The Complaint further alleges that Officer Marley arrived at the Piccone's home on January 27, 2009, after the Piccone's next door neighbor called the police and reported that a car was in their driveway.  See Complaint at ¶ 127.  Upon arriving at the Piccone home Officer Marley "encountered a man named John Nolan, a convicted felon and former client of Mr. Piccone's."  Complaint at ¶ 123.  "Subsequently, Marley attempted to justify his warrantless search of the Piccone's home by claiming that Nolan had said that he was Mr. Piccone's brother-in-law and that Nolan had supposedly consented to the search."  Complaint at ¶ 128.  The Complaint goes on to allege that Nolan is not Mr. Piccone's brother-in-law and did not have authority to give valid consent to a search of the Piccone's home.  Complaint at ¶¶ 128-129.  According to the Complaint, Officer Marley had no independent knowledge of Mr. Nolan's relationship to Mr. & Mrs. Piccone and did nothing to learn about that relationship besides speaking with Mr. Nolan.  Complaint at ¶¶ 130-131.

The Fourth Amendment's prohibition against the warrantless entry of a person's home does not apply where voluntary consent has been given from the owner of the property searched or by a third-party who has "common authority" over the property searched.  Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).  However, "actual authority is not necessarily the sole focus of the voluntary consent inquiry; apparent authority can support a finding of consent as long as the officer reasonably believed that the person giving consent was authorized to do so. United States v. Romain, 393 F. 3d, 69, n.2 (1st Cir. 2004), citing, Id. at 186.  Inasmuch as Officer Marley believed that Mr. Nolan was Mr. Piccone's brother-in-law, he could reasonably, if mistakenly, believe that Mr. Nolan had authority to consent to a search of the Piccone home. See Illinois, 497 U.S. at 185-186.  "As general consideration, there is every reason to suppose that mature family members possess the authority to admit police to look about the family

residence, since in common experience family members have the run of the house." U.S. v. Clutter, 914 F2d 775, 777 (6th Cir. 1990). See also United States v. Luna-Rojas, 28 F. Supp. 2d 54, 64 (D.P.R. 1998), quoting, Id. Therefore Mr. Nolan, who allegedly held himself out as a member of the Piccone family, had apparent authority to consent to Officer Marley's alleged search of the Piccone home and no violation of the Fourth Amendment occurred as a result of that search.

       1.    <u>The Doctrine of Qualified Immunity Precludes the Imposition of Liability</u>.

As set forth above, Officer Marley's alleged search of the plaintiff's home did not violate the plaintiffs' Forth Amendment right because is was based upon apparent consent and Officer Marley is entitled to qualified immunity as a matter of law. See Saucier, 533 U.S. at 201. No reasonable officer would believe that Officer Marley had violated plaintiff's Fourth Amendment Rights based upon a search consented to by an adult family member. Further, and as set forth above, as a capias warrant had issued for Mr. Piccone's arrest, no reasonable officer would believe that a search of the Piccone home for Mr. Piccone would violate the Piccones' Fourth Amendment rights. Therefore, Count III fails to state a claim upon which relief can be granted because the doctrine of qualified immunity precludes the imposition of liability.

E.    <u>Count IV: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Marley (Mass. Gen. Laws ch. 12, § 11I – Article 14 of the Massachusetts Declaration of Rights)."</u>

Count IV of the Complaint seeks to impose liability as against Officer Marley pursuant to M.G.L. c. 12, §11I based on the same conduct alleged in Count III. See Complaint at ¶ 212.

As set forth above, with regard to Count II, Plaintiffs have alleged direct deprivations of their rights and, therefore, Count IV of the Complaint should be dismissed. See Longval at Mass. 333.

     1.    <u>The Doctrine of Qualified Immunity Precludes the Imposition of Liability</u>.

As set forth above, Officer Marley is entitled to qualified immunity as to Count IV.

F.    <u>Count V: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Bartels (42 U.S.C. §
1983 – Fourth Amendment to the U.S. Constitution)."</u>

Count V of the Complaint alleges:

217.    On February 1, 2008, Defendant Bartels violated Mr. and Mrs. Piccone's
clearly established Fourth Amendment rights by conducting a warrantless
search and seizure of three to seven black plastic bags without consent and
in the absence of exigent circumstances.

Complaint at ¶ 217.

The Complaint further alleges:

146.    On February 1, 2008, the Piccones' next-door neighbor called the Dalton
Police to report that there were several cars in the Piccones' driveway.

147.    Defendant Bartels and another Dalton Police officer then went to the
Piccones' home.

148.    While there, Bartels and another Dalton Police officer seized several black
plastic bags.

153.    Bartels and the officer (or other Dalton Police officers) later searched the
bags at the Dalton Police Station.

Complaint at ¶¶ 146-148, 153.

As set forth above, it is the plaintiffs' burden to plead facts giving rise to a plausible
entitlement to relief. "Where a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between possibility and plausibility of entitlement
to relief." Ashcroft, 129 S. Ct. at 1949 (internal quotation marks omitted; citation omitted).
Count V provides factual allegations that give rise to the possibility of an entitlement to relief but
that are equally consistent with lawful conduct on the part of Chief Bartels. It does not provide
sufficient facts to state a claim upon which relief can be granted.

1.    <u>Qualified Immunity Precludes the Imposition of Liability</u>.

The relative paucity of facts alleged in Count V makes it relatively impossible to conduct an analysis of whether plaintiffs have alleged a violation of their constitutional rights. Therefore, it is appropriate to begin the qualified immunity analysis at step two of the Saucier test. See Maldonando, 568 F.3d at 270. In short, plaintiffs allege that Chief Bartels removed several black plastic bags from their property (but not that police officers entered their home) and subsequently searched them.

In California v. Greenwood, 486 U.S. 35 (1988), the Supreme Court held that the warrantless search and seizure of garbage left for collection outside the curtilage of a home does not violate the Fourth Amendment. In a decision cited with approval by the First Circuit, the Seventh Circuit has held that the warrantless search of garbage within the curtilage of a home does not violate the Fourth Amendment where the garbage is exposed to the public. See United States v. Hendrick, 922 F.2d 396 (7th Cir. 1991); United States v. Scott, 975 F.2d 927 (1st Cir. 1992).

First, a reasonable officer could conclude that black plastic bags left outside on plaintiffs' property were filled with garbage. See Pearson, 129 S. Ct. at 815 (qualified immunity applies to mistakes of fact). The exact location of the black plastic bags is not alleged. As pled, a reasonable police officer would not understand that Chief Bartels' conduct violated the plaintiffs' constitutional rights. See Maldonado, 568 F.3d at 269. The plaintiffs should not be allowed to take advantage of the bare-bones allegations stated in Count V in order to defeat the instant motion. Rather, because, upon the facts alleged, a reasonable officer could understand that Chief Bartels did not violate the plaintiffs' Fourth Amendment rights, Count V fails to state a claim upon which relief can be granted.

G.    Count VI: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Bartels (Mass. Gen. Laws ch. 12, § 11I – Article 14 of the Massachusetts Declaration of Rights)."

In Count VI, both plaintiffs attempt to impose liability as against Chief Bartels pursuant to M.G.L. c. 12, § 11I based on the same conduct alleged in Count V.  As set forth above, with regard to Count V, the plaintiffs have failed to meet their burden of pleading facts sufficient to give rise to a plausible entitlement to relief and the doctrine of qualified immunity precludes the imposition of liability.  Further, Count VI alleges only direct deprivations of plaintiffs rights and, therefore, does not state a cause of action pursuant to M.G.L. c. 12, § 11I.

H.    Count IX: "Plaintiffs Mr. Piccone Against Defendant Bartels (42 U.S.C. § 1983 – Fourth Amendment to the U.S. Constitution)."

Count IX of the Complaint alleges:

236.    At all relevant times, Mr. Piccone had a reasonable expectation of privacy in luggage he brought with him into the United States on February 12, 2008.

237.    On or about March 13, 2008, Defendant Bartels violated Mr. Piccone's clearly established Fourth Amendment rights by applying for a search warrant with a supporting affidavit that misrepresented and/or omitted critical facts.

238.    Without the deficiencies in Bartels's affidavit, there would not have been probable cause for a warrant to issue.

Complaint at ¶¶ 236-238.

It must be noted, that, as alleged, the assertion that Mr. Piccone had a reasonable expectation of privacy in luggage he brought with him into the United States is questionable, at best.

Since the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country.  See United States v. Ramsey, 431 U.S. 606, 616-617, 97 S. Ct. 1972, 1978-1979, 52 L.Ed.2d 617 (1977), citing Act of July 31, 1789, ch. 5, 1 Stat. 29.  This Court has long recognized Congress'

> power to police entrants at the border.  See Boyd v. United States, 116 U.S. 616,
> 623, 6 S. Ct. 524, 528, 29 L. Ed. 746 (1886).

U.S. v. Montoya de Hernandez, 473 U.S. 531, 537 (1985).  See also, U.S. v. Kallevig, 534 F.2d

411, 414 (1st Cir. 1976) ("[E]very person crossing our border may be required to disclose the

contents of his baggage, and of his vehicle, if he has one") (internal quotation marks omitted;

citation omitted); U.S. v. Beitia Garcia, 794 F. Supp. 36, 37 (D.P.R. 1991).  Therefore, to the

extent that Mr. Piccone alleges that he had an expectation of privacy in his luggage when

crossing the United States border, such expectation was unreasonable as a matter of law.

Nonetheless, the Fourth Amendment's warrant requirement is violated when false

statements are intentionally or recklessly used to obtain a warrant and the finding of probable

cause rests on those false statements.  See Franks v. Delaware, 438 U.S. 154 (1978); Aponte

Matos v. Toledo Dávila, 135 F.3d 182, 187 (1st Cir. 1998).  Further,

> A Fourth Amendment violation may be established if a [plaintiff] can show that
> officers acted in reckless disregard, with a 'high degree of awareness of [the]
> probable falsity' " of statements made in support of an arrest warrant.  Forest v.
> Pawtucket Police Dep't, 377 F.3d 52, 58 (1st Cir.2004) (citation omitted), cert.
> denied, --- U.S. ----, 125 S. Ct. 1315, 161 L.Ed.2d 111 (2005).  Similarly, the
> intentional or reckless omission of material exculpatory facts from information
> presented to a magistrate may also amount to a Fourth Amendment violation.
> DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir.1990) (upholding verdict for
> plaintiff where jury could have inferred that defendant police detective
> deliberately or recklessly excluded the exculpatory opinion of an important
> medical expert from the affidavit).

Burke v. Town Of Walpole, 405 F.3d 66, 81 (1st Cir. 2005).  The United States Court of Appeals

for the First Circuit has repeatedly held that the Franks standard applies in a civil suit against

police officers who allegedly use false information to obtain a warrant.  See Aponte Matos, 135

F.3d at 187; Burke, 405 F.3d at 81-82.  "As in the suppression context, to determine materiality

of the misstatements and omissions, we excise the offending inaccuracies and insert the facts

recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would

establish probable cause." Burke, 405 F.3d at 82, quoting, Wilson v. Russo, 212 F.3d 781, 789

(3d Cir. 2000) (alterations and internal quotation marks omitted).

Paragraphs 172-174 of the Complaint detail numerous alleged misrepresentations and

omissions allegedly giving rise to the Affidavit's infirmity:

172.   In his Affidavit in support of the warrant, Bartels failed to include the purported basis for DCF's finding of neglect and the order awarding custody to DCF - namely, that Mr. and Mrs. Piccone had not brought their children to a SAIN interview. Bartels also failed to mention that Mr. and Mrs. Piccone had offered to have their children interviewed on the condition that the interviews be video recorded.

173.   Bartels also misrepresented the evidence regarding the allegations of abuse involving Mr. Piccone and Child C, stating that DCF had found the allegations to be unsupported "due to the children not being made available for an interview." Bartels failed to mention that, in fact, there was no evidence of abuse, and also omitted the following facts, all of which were known to him:

   a.   Bartels failed to mention that Child C had been cleared of abuse after being thoroughly examined by a physician;

   b.   Bartels failed to mention that Nietsche and Vittum had observed Child C on January 11, had not seen any signs of abuse, and had downgraded the status of DCF's investigation from emergency to non-emergency; and,

   c.   Bartels failed to mention that one of Bartels's own officers had also seen Child C on January 11, and observed that Child C was "clean and had no sign of injuries".

174.   Finally, Bartels also omitted or misrepresented many of the same facts as in his application for a criminal complaint, all of which were known to him at the time he applied for the search warrant:

   a.   Bartels failed to mention that Mrs. Piccone had never been served with notice of any of the Juvenile Court proceedings;

   b.   Bartels failed to mention that the Piccone children were lawfully outside the jurisdiction of the Massachusetts courts at the time custody was awarded to DCF;

   c.   Bartels failed to include the circumstances of the searches of the Piccones' home on January 25 and January 27, 2008, which would have demonstrated that the searches were illegal.

> d.    Bartels incorrectly stated that the Piccones' home was in a state of
> disarray when it was illegally searched on January 25 and January
> 27, 2008, when in fact the house was clean and neat; and,
>
> e.    Bartels stated that after "New York officials were initially denied
> entry" into the New York home of Mr. Piccone's sister, they did
> eventually "check the home and did not locate any members of the
> Dalton Piccone family," but he failed to mention that the "check"
> of the home was actually an illegal warrantless search conducted
> over the objection of Mr. Piccone's sister.

Complaint at ¶¶ 172-174.

First, it must be noted that Chief Bartels was investigating an alleged violation of M.G.L.

c. 265, §26A, kidnapping of a minor by a relative.

> M.G.L. c. 265, § 26A provides:
>
> Whoever, being a relative of a child less than eighteen years old, without lawful
> authority, holds or intends to hold such a child permanently or for a protracted
> period . . .  shall be punished by imprisonment in the house of correction for not
> more than one year or by a fine of up to one thousand dollars, or both.  Whoever
> commits any offense described in this section by taking or holding said child
> outside the commonwealth or under circumstances which expose the person taken
> or enticed from lawful custody to a risk which endangers his safety shall be
> punished by a fine of not more than five thousand dollars, or by imprisonment in
> the state prison for not more than five years, or by both such fine and
> imprisonment.

M.G.L. c. 265, § 26A.

As to paragraph 172 of the Complaint, the basis for DCF's finding of neglect and the

order awarding custody to DCF were not material to the probable cause determination at issue.

See Burke, 405 F.3d at 84.  This particular allegation seems to be intertwined with allegations

that "Bartels incorrectly stated that a SAIN interview had been scheduled for January 14, 2008

…."  Complaint at ¶ 143(a).  The plaintiffs allege that in fact the SAIN interview was scheduled

for January 16, 2008; but they do not allege that they brought their children to a SAIN interview

on January 16, 2008.  See Complaint at ¶ 84.  The allegation in paragraph 172 of the Complaint

that Chief Bartels failed to mention that Mr. and Mrs. Piccone had offered to have their children

interviewed if the interviews were recorded is immaterial to the probable cause determination at issue.  There is no constitutional or statutory right to have a SAIN interview recorded.  More importantly, Chief Bartels was not investigating allegations of abuse or neglect and the probable cause determination at issue related to violation of M.G.L. c. 25, § 26A.  See Id.

The alleged omissions outlined in paragraph 173 of the Complaint which are focused on whether one or more Piccone children had, in fact, been subjected to abuse or neglect are not material to the probable cause determination at issue.  See Burke, 405 F.3d at 84.  See also, U.S. v. Capozzi, 347 F.3d 327, 333 (1st Cir. 2003) ("Irwin's omission of the informant's statement that a knife would also be found in the hotel room was also immaterial. The focus of the police's investigation had been on the search for two guns ...").

The allegation in paragraph 174(a) of the Complaint to the effect that the Affidavit does not include the information that Mrs. Piccone had never been served with notice of the Juvenile Court proceedings is misleading.  The Affidavit states:

> On Thursday, 01-17-08, Dalton Police Officers Nicholas and Strout went to the Piccone home to serve Mr. and Mrs. Piccone with summonses to appear in Berkshire Juvenile Court on Friday, 01-18-08, for a hearing concerning the care and custody of their children ...  The only person home was Mr. Piccone, who was served with his summons.  He would not divulge the exact whereabouts of his children and wife ....

Exhibit D at ¶ 4.  The information that Mrs. Piccone was not served with a summons is contained within the Affidavit.  Plaintiffs can not rely on challenging the form of information contained in the Affidavit in order to support their claims.  See Capozzi, 347 F.3d at 333, quoting, Illinois v. Gates, 462 U.S. 213, 235 (1983) ("affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation") (internal quotations omitted).

The allegation that Chief Bartels omitted information "that the Piccone children were lawfully outside the jurisdiction of the Massachusetts courts at the time custody was awarded to

DCF" can not support plaintiffs' claims.  As set forth above, the doctrine of collateral estoppel precludes Mr. Piccone from proceeding on the basis of this allegation.  This allegation was specifically considered and rejected by the Massachusetts District Court.  Further, this allegation rests on a (doubtful) legal conclusion - that Massachusetts Courts lacked jurisdiction personal jurisdiction over the Piccone children when it placed them in the custody of DCF - which is not entitled to an assumption of truth.  See Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

The allegations contained in Paragraph 174(c)-(e) of the Complaint are immaterial in that Chief Bartels' Affidavit does not rest on information gathered from allegedly illegal searches of the plaintiffs' home or the alleged assertion that the plaintiffs' home was in disarray when searched.  In fact, Chief Bartels' lengthy Affidavit provides probable cause for the issuance of the search warrant at issue based on portions of the Affidavit that are unchallenged by the plaintiffs.

The following is a partial summary of Chief Bartels' Affidavit:

- Chief Bartels had received a copy of the Juvenile Court docket of the Piccone matter and was further informed by Attorney Carol Show of DCF (formerly DSS) that: on January 18, 2008, Mr. Piccone was before the Court, was ordered to provide the whereabouts of his children and stated that they were at the home of Colleen Piccone of Staten Island, New York; On January 18, 2008, temporary custody of the Piccone children was given to DCF by the court; on January 22, 2008, Mr. Piccone again appeared before the Juvenile Court and was ordered to return his children to Massachusetts and place them in the custody of DCF by January 23, 2008 at 4:00 p.m. and temporary custody was again awarded to DCF; on January 23, 2008, Mr. Piccone was seen to been in possession of four "maroon colored" passports by a court officer at Juvenile Court in Pittsfield, Massachusetts and DCF notified "Customs" at JFK and LaGuardia International Airports in New York of the Piccone matter.

- On January 22, 2008, Mrs. Piccone withdrew $18,000 from a Bank of America Branch in Staten Island, New York.

- Mr. Piccone failed to deliver his children to DCF on January 23, 2008, as ordered by the Juvenile Court but was seen at a DCF office picking up a foster parent application for his sister. Later that day, his attorney and a therapist appeared in his place at the Pittsfield DCF office.

- Arrest warrants were issued by the Central Berkshire District Court for both Mr. and Mrs. Piccone on January 29, 2008.

- On or about February 8, 2008, Mr. Piccone's brother informed one or more Moorestown, New Jersey police officers that Mrs. Piccone was in Russia and Mr. Piccone was elsewhere in Europe.

- Mr. Piccone was apprehended by Customs Agents at Logan International Airport on February 12, 2008, after disembarking from a flight originating from Paris, France. It was unknown whether this was a connecting flight from another country.

- On February 13, 2008, Chief Bartels received faxed copies of documents seized by federal agents pursuant to a border search of Mr. Piccone's belongings including: email correspondence between Mr. and Mr. Piccone that indicated that at the time the correspondence was sent they were in New Jersey and Moscow, Russia, respectively; an Air Canada boarding pass in Mr. Piccone's name dated February 1, 2008, for a flight between Montreal and Toronto, Canada; An Air Canada ticket receipt and itinerary for Mr. Piccone showing flights from Canada to London; a handwritten note listing household and personal items from the Piccone's Dalton, Massachusetts home to be shipped to Moscow, Russia; a receipt dated February 8, 2008, for the purchase of a cell phone in Paris, France; a receipt from a Best Western hotel located in Paris, France and an Air France boarding pass.

- The Affidavit also provides information regarding the chain of custody for a navy blue, soft-sided Jet Liner brand bag with an Air France luggage tag showing the name "Piccone/Louis."

See Exhibit D at pp. 3-9.

The facts and circumstances set forth above and as provided in greater detail in Chief Bartels' Affidavit provide probable cause for the issuance of a search warrant to search Mr. Piccone's luggage. "Probable cause ... exists if the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed or is about to commit a

crime." Burke, 405 F.3d at 80 (internal quotation marks omitted; citation omitted). The alleged omissions and inaccurate statements in the Affidavit did not cause the warrant to issue without probable cause. See Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997); Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir. 1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law").

Because the Affidavit provides sufficient information to establish probable cause notwithstanding the alleged false statements and omissions, Count XIX fails to state a claim upon which relief can be granted. See Aponte Matos, 135 F.3d at 187 ("[T]he material that is the subject of the alleged falsity or reckless disregard must be necessary to establish probable cause. It is not enough to allege negligence or innocent mistake") (citations omitted).

 1. The Doctrine of Qualified Immunity Precludes the Imposition of Liability.

As set forth above, the warrant at issue rested on probable cause and, therefore, Chief Bartels is entitled to qualified immunity as a matter of law. See Saucier, 533 U.S. at 201. No reasonable police officer would believe that Chief Bartels' Affidavit failed to provide probable cause for the issuance of the search warrant at issue. See Maldonado, 563 F.3d at 269. Therefore, Count XIX fails to state a claim upon which relief can be granted because the doctrine of qualified immunity precludes the imposition of liability.

I. Count X: "Plaintiffs Mr. Piccone Against Defendant Bartels (Mass. Gen. Laws ch. 12, § 11I – Article 14 of the Massachusetts Declaration of Rights)".

Count X attempts to impose liability upon Chief Bartels pursuant to M.G.L. c. 12, § 11I based on the same conduct as alleged in Count IX. Count X alleges "On or about March 13, 2008, Defendant Bartels violated Mr. Piccone's clearly established Article 14 rights by applying for a search warrant with a supporting affidavit that misrepresented and/or omitted critical facts." Complaint at ¶ 244. As set forth above, Count X fails to state a claim upon which relief can be

granted because it alleges only a direct deprivation of plaintiffs rights which is not cognizable

pursuant to M.G.L. c. 12, § 11I.  Further, as is also set forth above, Count X fails because the

alleged deficiencies in the warrant application are immaterial.  Finally, the doctrine of qualified

immunity precludes the imposition of liability.

J.    <u>Count XI: "Plaintiff Mr. Piccone Against Defendant Bartels (42 U.S.C. § 1983 –
      Fourth Amendment to the U.S. Constitution)</u>."

Count XI alleges:

250.    At all relevant times, Mr. Piccone had a reasonable expectation of privacy
        in the passport he brought with him when he returned to the United States
        on February 12, 2008.

251.    On or about March 28, 2008, Defendant Bartels violated Mr. Piccone's
        clearly established Fourth Amendment rights by applying for a search
        warrant with a supporting affidavit that misrepresented and/or omitted
        critical facts.

Complaint at ¶¶ 250-251.

The assertion that Mr. Piccone had a reasonable expectation of privacy in his passport is

not viable.  First, it can not be disputed that Mr. Piccone's passport was subject to review and

inspection by customs and immigration officials when he returned to the United States.  Mr.

Piccone does not own his passport.  "A passport at all times remains the property of the United

States and must be returned to the U.S. Government upon demand."  22 C.F.R. §51.7(a).

Further, 22 C.F.R. 51.7(b) authorizes law enforcement authorities to take possession of a

passport for use in an investigation or prosecution and directs them to return such passports to

the Department of State upon completion of an investigation or prosecution.  See 22 C.F.R.

51.7(b).  See also, http://travel.state.gov/passport/ppi/info/info_870.html ("When a subject is

routinely apprehended and has a passport, the passport may be retained by the law enforcement

agency for evidentiary purposes").  The plaintiff can not claim a violation of his Fourth

Amendment rights in the issuance of an (apparently unnecessary) warrant authorizing the search of his passport.  See Id.

Nonetheless, and without waiving the foregoing, paragraph 182 of the Complaint alleges:

> 182.    On March 28, 2008, the defendant Bartels applied for a warrant to seize and review Mr. Piccone's passport.  His supporting Affidavit is identical to the one he submitted in support of his application to search Mr. Piccone's luggage, and contains all the same deficiencies described in Paragraph 172-174, which are incorporated herein by reference."

Therefore, as set forth above, the alleged inaccuracies and omissions from Chief Bartels' Affidavit are not material to the issue of probable cause.  Further, as set forth above, Chief Bartels is entitled to qualified immunity.  Therefore, Count XI fails to state a claim upon which relief can be granted.

K.    <u>Count XII: "Plaintiffs Mr. Piccone Against Defendant Bartels (Mass. Gen. Laws ch. 12, § 11I – Artcle 14 of the Massachusetts Declaration of Rights)</u>."

Count XII rests on the same alleged conduct as Count XI.  As set forth above, Count XII is substantively infirm and the doctrine of qualified immunity precludes the imposition of liability.

L.    <u>Counts XIII-XVI: Claims By Each Plaintiff Alleging Violation of Their Fourth Amendment and art. 14 Rights in Connection With Searches of Their Email Accounts</u>.

Counts XIII-XVI also allege violation of Mr. and Mrs. Piccone's Fourth Amendment rights with regard to warrant applications that allegedly misrepresented and/or omitted critical facts.  Specifically, Count XIII alleges violation of Mr. Piccone's Fourth Amendment rights in connection with an Affidavit that was submitted in support of a Virginia search warrant that issued authorizing the search of Mr. Piccone's email sent to and received from an America On-line account.  Count XIV alleges the same conduct and attempts to impose liability pursuant to M.G.L. c. 12, § 11I.

Count XV alleges violation of Mrs. Piccone's Fourth Amendment rights in connection with a warrant application regarding Mrs. Piccone's Yahoo! account.    Count XVI alleges violation of M.G.L. c. 12, § 11I with regard to the same conduct.

The plaintiffs allege that the affidavits submitted in support of these warrant applications are nearly identical to the Affidavit D and suffered from the same deficiencies described in Paragraphs 172-174 of the Complaint.  See Complaint at ¶¶ 184, 187.  Thus, as set forth above, with regard to Count IX, Counts XIII-XVI should be dismissed as they fail to state claims upon which relief can be granted.

The plaintiffs also allege that Chief Bartels knew or should have known that Mr. Piccone is an attorney and that the search of his email account "would likely reveal privileged documents, yet he did not include this information in his warrant Affidavit, nor did he take any measures to shield himself (or other officers involved in the investigation) from reviewing these privileged documents before beginning the search."  Complaint at ¶ 189.  However, the attorney-client privilege is a common law privilege, not a constitutional right of an attorney.  See generally, U.S. v. Caraballo-Rodriguez, 480 F.3d 62, 72 n.7 (1st Cir. 2007) (describing the attorney-client privilege as a common law privilege).  Defendants are aware of no authority that would indicate that review of documents protected by the attorney-client privilege, the work-product doctrine or which contain trade secrets pursuant to an otherwise valid warrant offends the Fourth Amendment.  Therefore, Counts XIII and XIV fail to state claims upon which relief can be granted.  Further, no reasonable officer would understand that reviewing documents pursuant to a search warrant would violate Mr. Piccone's Fourth Amendment rights and therefore, Chief Bartels is entitled to qualified immunity.

M.  Count XVII: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Town of Dalton (42 U.S.C. § 1983 – Municipal Liability for Fourth Amendment Violations Under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1979))."

Count XVII attempts to impose liability as against the Town of Dalton based on Chief Bartels conducts.  It is clear that a municipality cannot be liable on a theory of respondeat superior, but, rather, may only be liable upon allegations and proof of impermissible policy or custom.  Monell v. Dept. of Social Services, 436 U.S. 658, 690-695 (1978).  The defendant municipality submits that the Complaint is devoid of any factual support of the same.  In the absence of proof that the Town employed an unconstitutional municipal policy or custom, there can be no municipal liability under 42 U.S.C. § 1983.  Id.; Baron v. Hickey, 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

The Monell Court held that municipal liability under § 1983 can be imposed only where the municipality itself "causes" the alleged constitutional violation.  Monell, supra, 436 U.S. at 658, 692; see also, DiRico v. City of Quincy, 404 F.3d 464, 469, n.12 (1st Cir. 2005).  The plaintiff bears the burden of demonstrating the existence of a policy or custom and a "direct causal link" between that policy or custom and the alleged constitutional violation.  City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978); Santiago v. Fenton, 891 F.2d 373, 381-382 (1st Cir. 1989).

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  However:

> [N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability.  Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  See, e.g., Oklahoma City v. Tuttle, 471 U.S. at 822-824 . . . .

Id. at 481-482 (emphasis added) (footnotes omitted). See also, Roma Const. Co. v. aRusso, 96 F.3d 566, 576 (1st Cir. 1996).

Plaintiffs seek to impose municipal liability on the basis of specific acts by Chief Bartels that occurred in the course of his conduct of an investigation. As alleged, Chief Bartel's was acting at all times in the capacity of an investigator. The fact that he exercised discretion in the course of so acting does not give rise to municipal liability even if that discretion was abused. See Id. at 481-482. To impose liability on the basis of conduct that occurred in Chief Bartel's capacity as a police officer and investigator rather than any policy choice would subject Dalton to vicarious liability.

Further, plaintiff's Monell claims that rest on the conduct alleged in Counts III, V, IX, XI, XIII-XVI fail for lack of an underlying constitutional violation and, therefore, as a matter of law there was no policy or custom which caused a constitutional harm. See DiRico v. City of Quincy, 404 F.3d 468-469 (1st Cir. 2005).

N.     Count XVIII: Plaintiffs Mr. and Mrs. Piccone Against Defendant Town of Dalton (Mass. Gen. Laws ch. 12, § 11I – Municipal Liability for Article 14 Violations)."

Count XVIII attempts to impose liability as against Dalton pursuant to M.G.L. c. 12, § 11I. It fails to state a claim upon which relief can be granted. It is indisputable that a municipality cannot be held liable under M.G.L. c. 12, § 11I. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-593 (2001).

O.     Count XIX: "Plaintiffs Mr. and Mrs. Piccone Against Defendant Bartels (Malicious Prosecution)."

Both plaintiffs have brought common law malicious prosecution claims against Chief Bartels.

To prevail on a malicious prosecution claim under Massachusetts law, a suitor must prove that the defendant (i) instituted criminal proceedings (ii) with malice and (iii) without probable cause, and (iv) that the proceedings were terminated in

the accused's favor. Correllas v. Viveiros, 410 Mass. 314, 572 N.E.2d 7, 10 (1991).

Limone v. U.S., 579 F.3d 79, 89 (1st Cir. 2009).

As set forth above, Mr. Piccone's malicious prosecution claim is barred by the doctrine of collateral estoppel; the Pittsfield District Court held that Chief Bartels instituted criminal proceedings against Plaintiff with probable cause. Further, plaintiffs allege that the Statement of Facts, Exhibit C, suffers from similar deficiencies as Exhibit D, Chief Bartels' Affidavit. See Complaint at ¶¶ 136-145; 172-174. As set forth above with regard to Count IX, the alleged inaccuracies and omissions in the Statement of Facts are immaterial. Count XIX fails to state a claim on behalf of Mr. Piccone upon which relief can be granted.

Further, as to Mrs. Piccone's malicious prosecution claim it is clear that probable cause existed to institute criminal proceedings. As discussed in the Statement of Facts and throughout the instant memorandum, as of January 23, 2008, the date that the Juvenile Court had ordered the Piccones' children to be turned over to the custody of DCF, the whereabouts of the family was unknown. See Exhibit C at p. 5 of 5. Mr. Piccone had previously indicated that his wife and children were outside of the Commonwealth. See Id. Further, though Mrs. Piccone did not attend Juvenile Court hearings from January 18, 2008 on, she knew of the intentions of DCF and it was reasonable to suppose there was communication between Mr. and Mrs. Piccone. See Id. Therefore, probable cause clearly existed upon which to institute criminal proceedings against Mrs. Piccone.

P.    <u>Count XX: "Plaintiff Mr. Piccone Against Defendant Bartels (False Arrest)."</u>

Count XX is a common law false arrest claim brought by Mr. Piccone as against Chief Bartels. Paragraph 309 of the Complaint alleges "Defendant Bartels intentionally caused Mr. Piccone to be wrongfully arrested by misrepresenting and/or omitting critical facts from Bartels'

application for an arrest warrant." Complaint at ¶ 309. Mr. Piccone's false arrest claim is barred

by the doctrine of collateral estoppel; the Pittsfield District Court held that the application for a

criminal complaint provided probable cause. See Exhibit B. As set forth above, despite its

alleged inaccuracies and omissions, the Statement of Facts provides probable cause for the

issuance of an arrest warrant. Therefore, Count XX fails to state a claim upon which relief can

be granted.

CONCLUSION

WHEREFORE, for the foregoing reasons, defendant's partial motion to dismiss should

be allowed.

THE DEFENDANTS,
JOHN W. BARTELS, JR., JOHN M.
MARLEY and TOWN OF DALTON

By____/s/ Nancy Frankel Pelletier, Esq.____
Nancy Frankel Pelletier, Esq.-BBO #544402

By____/s/ David S. Lawless, Esq._____
David S. Lawless, Esq.-BBO #664754
Both of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
npelletier@robinson-donovan.com
dlawless@robinson-donovan.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non-registered participants on this 9th day of November, 2009.

/s/ Nancy Frankel Pelletier, Esq._____
Nancy Frankel Pelletier, Esq.