UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS PICCONE and ELENA PICCONE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civ. No. 09-30146-MAP |
| | ) |
| ANGELO MCCLAIN, LYNNE REBER, | ) |
| JOAN MAZZEO, HEATHER NIETSCHE, | ) |
| IRENE WOODS, LANCE LAPOINTE | ) |
| JANET RICE, | ) |
| | ) |
| JOHN W. BARTELS, JR., JOHN M. MARLEY, | ) |
| TOWN OF DALTON, and | ) |
| | ) |
| RICHARD SMITH, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF LOUIS PICCONE'S OPPOSITON TO DEFENDANTS, JOHN BARTELS, JOHN MARLEY AND TOWN OF DALTON'S MOTION TO DISMISS**

**PROCEDURAL BACKGROUND**

Plaintiffs sued defendants John Bartels and John Marley, in their individual capacity, for violations of their constitutional rights. Plaintiffs sued the Town of Dalton under a theory of municipal liability. All defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the motion should be denied.

**STANDARD OF REVIEW**

The rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss, the complaint must merely allege "a plausible entitlement to relief." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 559). Importantly, "[s]pecific facts are not

necessary" for a claim to be "plausible"; instead, the "short and plain statement" required by Rule 8(a) need only "give the defendant notice of what the . . . claim and the grounds upon which it rests." *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). Put another way, a claim is "plausible" when the complaint "contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S __, 129 S. Ct. 1937, 1949 (2009).

In making this determination, the Court must "accept as true all of the plaintiff's well-pleaded facts and must draw all reasonable inferences in the plaintiff's favor." *Gargano*, 572 F.3d at 48-49. Importantly, the Court is limited to consideration of the allegations in the complaint, with a "narrow exception" for documents central to a plaintiff's claim or sufficiently referred to in the complaint. *Id.* at 47 n.1.

## FACTUAL ALLEGATIONS

The following facts, drawing all inferences in plaintiffs' favor, fully support plaintiffs' claims against the defendants. The Dalton Police became involved in an investigation against the Piccones for allegations originating through the Department of Children and Families ("DCF"). *See* Complaint ¶¶ 22-106. As a result of this investigation, the Dalton police became aware that by January 19, 2008, Mrs. Piccone and her three children were staying with Mr. Piccone's father in New York. *See id.* at ¶ 109. They had gone to New York a few days earlier, on January 15, 2008—before any care and protection petition was ever filed against the Piccones. *See id.* at ¶¶ 107-109.

At approximately 1:30 p.m. on January 25, 2009, Defendant Bartels, accompanied by two Dalton Police officers, went to the Piccones' home. None of the Piccones' cars were in the

driveway. Bartels and the officers knocked on the Piccones' front and back doors and rang the Piccones' doorbell, but no one answered. Based on the information known to Bartels and the officers—including the fact that there were no cars in the Piccones' driveway and no one was answering the door—Bartels and the officers knew or should have known that no one was home. Bartels and the officers did not have a search warrant, nor did they have probable cause to support a warrant if they had sought one. There were no exigent circumstances that would justify a warrantless search of the Piccones' home. Despite all this, Bartels and the officers entered the Piccones' garage and then let themselves into the living quarters of the Piccones' home. Bartels and the officers then conducted a warrantless search of the Piccones' home. The Dalton Police have a policy or practice of routinely entering private citizens' homes under the so-called "community caretaker" role. *See id.* at ¶¶112-120.

At approximately 4:00 p.m. on January 27, 2009, the Piccones' next-door neighbor called the Dalton Police and stated that there was a car in the driveway at the Piccones' home. Shortly thereafter, Defendant Marley, a Dalton Police officer, arrived at the Piccones' home, accompanied by another Dalton Police officer. When he arrived, Marley encountered a man named John Nolan, a convicted felon and former client of Mr. Piccone's. After speaking with Nolan, Marley entered the Piccones' home and conducted a warrantless search of the home. Marley did not have a search warrant, nor did he have probable cause to support a warrant if he had sought one. There were no exigent circumstances that would justify a warrantless search of the Piccones' home. Subsequently, Marley attempted to justify his warrantless search of the Piccones' home by claiming that Nolan had said that he was Mr. Piccone's brother-in-law and that Nolan had supposedly consented to the search. *See id.*, at ¶¶ 121-127.

Nolan is not, nor has he ever been, Mr. Piccone's brother-in-law. Nolan did not have authority to give valid consent to a search of the Piccones' home. Marley had never met Nolan before, and had no knowledge of the relationship—if any—between Nolan and the Piccones. Aside from speaking with Nolan, Marley did nothing to learn about the relationship—if any—between Nolan and the Piccones nor did he confirm whether Nolan had authority to consent to a search of the Piccones' home. *See id.*, at ¶¶ 128-132.

On or around January 29, 2008, DCF shared all of its information with the Dalton Police and the Berkshire County District Attorney's Office. That same date, Defendant Bartels applied for and received criminal complaints and arrest warrants for three counts of parental kidnapping against Mr. and Mrs. Piccone. At the time Bartels sought the complaints and warrants, he knew that Massachusetts's parental-kidnapping statute, Mass. Gen. Laws ch. 265, § 26A, does not criminalize the act of a parent taking his or her child out of the Commonwealth unless there is a valid custody order divesting the parent of custody. In his application for a criminal complaint and arrest warrant, Bartels failed to mention the crucial fact that Mrs. Piccone and the Piccone children had lawfully left the Commonwealth <u>before</u> DCF ever sought custody of the Piccone children. Bartels also failed to mention that Mrs. Piccone had actual custody of the children and had never been served with a court order removing custody from her, nor had she been served with notice of the care and protection proceeding. Accordingly, Bartels knew that there was not probable cause to support parental-kidnapping charges against Mr. and Mrs. Piccone, but he intentionally—and with malice—sought charges against them anyway. *See id.*, at ¶¶ 134-140.

The application contained several misrepresentations. Some were designed to imply that Mrs. Piconne and her children were in Massachusetts when the care and protection petition was filed. Others were blatantly false: that the Piccones missed a scheduled SAIN interview when

none was scheduled, that their house was in disarray, and that a New York court issued a warrant to search Mr. Piconne's sister's house. Bartels failed to include information that the Piccones had never been given notice of the Juvenile Court proceedings nor the circumstances of the illegal, warrantless searches on January 25th and 27th. In addressing allegations of physical abuse/neglect, he also failed to indicate that Child C was cleared of abuse, that DCF agents and his own police officers saw Child C and did not notice any signs of abuse, that there were no allegations of abuse against Child A or B, and no allegations that Mrs. Piccone had abused her children. *See id.*, at ¶¶141-145.

On February 1, 2008, the Piccones' next-door neighbor called the Dalton Police to report that there were several cars in the Piccones' driveway. Defendant Bartels and another Dalton Police officer then went to the Piccones' home. While there, Bartels and the officer seized several black plastic bags. As the bags were being loaded into a Dalton Police cruiser, Mr. Piccone's sister, and her boyfriend, who are both high-level officials with the federal Department of Homeland Security, arrived at the Piccones' home. They told Bartels and the officer that they did not have permission to be on the Piccones' property, let alone to seize anything. Bartels and the officer ignored them, ultimately seizing three to seven black plastic bags of evidence from the Piccones' home. Bartels and the officer did not have a warrant, nor did they have probable cause to support a warrant if they had sought one. There were no exigent circumstances that would justify the actions of Bartels and the officer. Bartels and the officer (or other Dalton Police officers) later searched the bags at the Dalton Police Station. Incredibly, after searching the bags, Bartels and the Dalton Police claimed to have disposed of the bags and their contents without even taking an inventory of what was in the bags. Upon information and belief, several

documents were obtained from the bags and used by Dalton Police as evidentiary support for future legal proceedings. *See id.*, at ¶¶ 146-154.

On February 29, 2008, Defendant Richard Smith, a Massachusetts State Police detective, traveled to Boston to take custody of a piece of luggage that Mr. Piccone had brought with him when he arrived at Logan International Airport on February 12. The previous day, Assistant District Attorney Joan McMenemy called Mr. Piccone's then-attorneys and requested consent to search Mr. Piccone's luggage. Her request was denied. Thus, on or about March 13, 2008— nearly two weeks after Smith seized Mr. Piccone's luggage—Defendant Bartels applied for and received a search warrant and then searched Mr. Piccone's luggage. *See id.*, at ¶¶ 169-171

In his affidavit in support of the warrant, Bartels failed to include the purported basis for DCF's finding of neglect and the order awarding custody to DCF—namely, that Mr. and Mrs. Piccone had not brought their children to a SAIN interview. Bartels also failed to mention that Mr. and Mrs. Piccone had offered to have their children interviewed on the condition that the interviews be videorecorded. Bartels also misrepresented the evidence regarding the allegations of abuse involving Mr. Piccone and Child C, stating that DCF had found the allegations to be unsupported "due to the children not being made available for an interview." Bartels failed to mention that, in fact, there was <u>no</u> evidence of abuse, and also omitted facts that indicated the same. Finally, Bartels also omitted or misrepresented many of the same facts as in his application for a criminal complaint, all of which were known to him at the time he applied for the search warrant. *See id.*, at ¶¶ 172-74.

The search of Mr. Piccone's luggage revealed no evidence relevant to either the criminal charges against Mr. Piccone or the DCF allegations. But the search did reveal approximately 500 pages of Mr. Piccone's legal documents, including: (a) confidential trade secret information

regarding several of Mr. Piccone's intellectual property clients; (b) attorney-client and work-product privileged information about the ongoing juvenile and criminal cases against Mr. Piccone; and, (c) attorney-client and work-product privileged information about the ongoing juvenile and criminal cases against Mrs. Piccone. Bartels and Marley knew that Mr. Piccone was an attorney, and given the types of materials that Bartels intended to search for—"printed electronic mail (email), correspondence, . . . personal letters or notes"—Bartels knew or should have known that the search would likely reveal privileged documents, yet he did not include this information in his warrant affidavit, nor did he take any measures to shield himself (or other officers involved in the investigation) from reviewing these privileged documents before beginning the search. Once Bartels and Marley commenced the search, the nature of the underlying documents—including retainer agreements, client e-mails, draft complaints, notes regarding experts, witnesses, and litigation strategies—made their privileged status immediately apparent. Even after seeing that Mr. Piccone's luggage contained numerous privileged documents, Bartels, Marley, and other officers acting at their direction continued to review these materials anyway. *See id.*, at ¶¶ 175-179

Upon being placed into custody in Berkshire County, Mr. Piccone's passport was confiscated and placed in the custody of the Chief of Probation. The Dalton Police wanted to view Plaintiff's passport, so the police asked the Clerk of Court to provide the passport to them. The Clerk of Court refused because the police did not have a warrant. On March 28, 2008, Defendant Bartels applied for a warrant to seize and review Mr. Piccone's passport. His supporting affidavit is identical to the one he submitted in support of his application to search Mr. Piccone's luggage, and contains all the same deficiencies from his prior applications. *See id.*, at ¶¶ 180-182.

On or about March 31, 2008, a Virginia police officer—acting at the request of Bartels—applied for a search warrant in Virginia to obtain from America Online information regarding Mr. Piccone's e-mail account. The Virginia police officer's warrant application incorporated and relied on an affidavit from Bartels. Based on Bartels's deficient affidavit, a Virginia court issued a warrant for the materials requested, and as a result, a large volume of Mr. Piccone's personal and legal e-mail was produced to the Dalton Police. *See id.*, at ¶¶ 183-185.

On or about April 15, 2008, a California police officer—acting at the request of Bartels—applied for a search warrant in California to obtain from Yahoo!, Inc. information regarding Mrs. Piccone's e-mail account. The California police officer's warrant application incorporated and relied on an affidavit from Bartels. Based on Bartels's deficient affidavit, a California court issued a warrant for the materials requested, and as a result, a large volume of Mrs. Piccone's personal and legal e-mail was produced to the Dalton Police. *See id.*, at ¶¶ 186-188.

At the time Bartels submitted the warrant affidavits, he knew that Mr. Piccone was an attorney, and given that Bartels was seeking to search Mr. and Mrs. Piccone's e-mail, he knew or should have known that the search would likely reveal privileged documents, yet he did not include this information in his warrant affidavit, nor did he take any measures to shield himself (or other officers involved in the investigation) from reviewing these privileged documents before beginning the search. Once Bartels (or other officers acting at his direction) commenced the search, the nature of the underlying documents—including retainer agreements, client e-mails, draft complaints, notes regarding experts, witnesses, and litigation strategies—made their privileged status immediately apparent. Even after seeing that Mr. and Mrs. Piccone's e-mails contained numerous privileged documents, Bartels (or other officers acting at his direction) continued to review these materials anyway. More troubling still, Bartels and Marley made Mr.

8

And Mrs. Piccone's personal and legal e-mail available to every member of the Dalton Police, including officers who had no involvement in the Piccones' case. *See id.*, at ¶¶ 189-192.

<u>**ARGUMENT**</u>

I.    **Mr. Piccone's Malicious Prosecution and False Arrest Claims Against Chief Bartels are not Barred by Issue Preclusion.**

In Count XIX of the Complaint, Mr. and Mrs. Piccone each bring malicious prosecution claims against Chief Bartels, Complaint at ¶¶ 301-306, and in Count XX, Mr. Piccone brings a false arrest claim against Chief Bartels, *id.* at ¶¶ 307-310. Chief Bartels seeks dismissal arguing only that Mr. Piccone's claims for malicious prosecution and false arrest should be dismissed because they are barred by the doctrine of issue preclusion. *See* Dalton MTD Memo at 3-6.[1] More specifically, Chief Bartels suggests that a state district court's denial of Mr. Piccone's motion to dismiss the parental-kidnapping charge against him precludes Mr. Piccone's claims. *Id.* Under Massachusetts law, "[t]he doctrine of issue preclusion provides that when an issue has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." *Jarosz v. Palmer*, 436 Mass. 526, 530, 766 N.E.2d 482, 487-88 (2002) (quotation marks and citations omitted); *see Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005) (recognizing that federal courts must give state-court judgments the same preclusive effect as would be given by the courts of the state that issued the judgment). Here, Chief Bartels's argument fails for three reasons: (1) the district court's denial was not a final judgment; (2) the district court's initial denial of Mr. Piccone's motion to dismiss was not "essential" to the ultimate judgment in Mr. Piccone's criminal case—*i.e.*, dismissal of the

---

[1]    Notably, Chief Bartels does not argue that the allegations supporting Mr. Piccone's claims in Counts XIX and XX are insufficient to state a claim, nor does he make any argument supporting dismissal of Mrs. Piccone's malicious prosecution claim.

parental-kidnapping charge; and (3) the issues the district court decided by initially denying Mr.

Piccone's motion to dismiss are not identical to the issues now raised by Mr. Piccone's malicious

prosecution and false arrest claims.

> A.    The state district court's initial decision denying Mr. Piccone's motion to dismiss
> was not a "final judgment," and therefore has not preclusive effect.

For purposes of issue preclusion, a decision is not sufficiently "final" unless, among other

things, "the earlier opinion was subject to review or was in fact reviewed." *Jarosz*, 436 Mass. at

533-34, 766 N.E.2d at 489, *quoting Tausevich v. Board of Appeals of Stoughton*, 402 Mass. 146,

149, 521 N.E.2d 385 (1988). In other words, "[t]he doctrine of issue preclusion cannot apply

where there is no avenue for review of the prior ruling on the issue." *Jarosz*, 49 Mass. App. Ct.

at 837, 733 N.E.2d at 168, *quoting Sena v. Commonwealth*, 417 Mass. 250, 260, 629 N.E.2d 986

(1994); *see Tausevich*, 402 Mass. at 149, 521 N.E.2d at 387-88 (holding that where there is not

an appealable judgment, issue preclusion is available only in "special circumstances").

Here, as described in Defendants' memorandum and the exhibits they attached to it,

although the state district court initially denied Mr. Piccone's motion to dismiss, it later granted

his motion for reconsideration, and as a result, the parental-kidnapping against Mr. Piccone was

ultimately dismissed. *See* Dalton MTD Memo at 3-6 and Exhibits A & B. Because the charge

against Mr. Piccone was dismissed, he could not appeal the district court's initial denial of his

motion to dismiss.[2] In sum, Mr. Piccone did not have "an avenue for review" of the district

court's initial decision, and therefore that decision cannot be used to now preclude Mr. Piccone's

malicious prosecution and false arrest claims against Chief Bartels.

---

[2]    In Massachusetts, criminal defendants are not permitted to seek appeal from the denial of a motion to
dismiss. *See e.g., Commonwealth v. Jackson*, 437 Mass. 1008, 1009, 770 N.E.2d 469, 470 (2002) ("The denial of a
motion to dismiss in a criminal case is not appealable until after trial, and we have indicated many times that [Mass.
Gen Laws ch. 211, § 3] may not be used to circumvent that rule."). Instead, such claims can be raised only <u>after</u>
conviction (unless the motion raises a double jeopardy claim). *Id.*

B.    *The district court's denial of Mr. Piccone's motion to dismiss was not essential to the actual judgment—namely, dismissal of the criminal charge.*

For a ruling to have preclusive effect, it must also have a bearing on the outcome of the prior case. *Jarosz*, 436 Mass. at 533, 766 N.E.2d at 489. Put another way, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." *Id.*, *quoting* Restatement (Second) of Judgments § 27 comment h (1982)). Thus, for example, a decision on a motion *in limine* in one case does not preclude relitigation of the same issues in a subsequent case. *Jarosz*, 436 Mass. at 533, 766 N.E.2d at 489; *see also id.* (holding that claims based on purported attorney-client relationship between plaintiff and defendant were not precluded by ruling in prior case that no attorney-client relationship existed because that determination was not "essential" to the judgment in the prior case).

Here, as Defendants candidly acknowledge, the judgment in the state criminal case was a dismissal of the parental-kidnapping charge against Mr. Piccone. *See* Dalton MTD Memo at 5 and Exhibit B. To be sure, the state district court suggested that its decision was "not legally inconsistent with its earlier ruling that the complaint against [Mr. Piccone] properly issued upon a finding of probable cause." *Id.*, at Exhibit B at 7 n.6. But the doctrine of issue preclusion cannot be invoked merely when a judgment is "not legally inconsistent" with the determinations on which preclusion is sought. Rather, as noted, the judgment must be <u>dependent</u> on those determinations. *Jarosz*, 436 Mass. at 533, 766 N.E.2d at 489. In this case, it is quite obvious that the judgment in Mr. Piccone's criminal case—dismissal of the parental kidnapping charge—was not dependent on the district court's resolution of the issues raised by Mr. Piccone's motion to dismiss. Accordingly, for this reason also, the district court's initial decision denying Mr.

Piccone's motion to dismiss cannot be used to now preclude Mr. Piccone's malicious prosecution and false arrest claims against Chief Bartels.

   C.    *The issues the district court decided in initially denying Mr. Piccone's are not identical to the issues raised by Mr. Piccone's malicious prosecution and false arrest claims.*

   Issue preclusion applies only when "the issue in the prior adjudication was identical to the issue in the current adjudication." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005). Here, the state district court's decision denying Mr. Piccone's motion to dismiss resolved issues far different from the ones Mr. Piccone seeks to litigate in this Court. At most, the district court determined that the criminal complaint for parental kidnapping against Mr. Piccone was supported by probable cause—based <u>exclusively</u> on the information provided by Chief Bartels to the magistrate who issued the complaint. *See* Dalton MTD Memo, Exhibit A at 5 ("In determining whether probable cause existed, the court, as a matter of law, is strictly limited to a review of the Statement of Facts presented by the Dalton Police Department to [the magistrate] on January 29, 2008."). But in this case, Mr. Piccone's claims against Chief Bartels are premised on what was <u>not</u> presented to the magistrate—*i.e.*, the numerous misrepresentations in and omissions from Chief Bartel's application for a criminal complaint. *See* Complaint at ¶¶ 143-45, 301-10. Here, Mr. Piccone's claims are based on "the intentional or reckless omission of material exculpatory facts from information presented to a magistrate." *Burke v. Town of Walpole*, 405 F.3d 66, 81 (1st Cir. 2005); *see Franks v. Delaware*, 438 U.S. 154 (1978). These "[a]llegations of intentional or reckless misstatements or omissions implicate the very truthfulness, not just the sufficiency, of a warrant application." *Burke*, 405 F.3d at 82.[3] In sum, because Mr. Piccone's claims in Counts XIX and XX raise issues that are not identical to

---

[3]    Indeed, when the state district court ultimately went beyond the four corners of Chief Bartels's submissions—rather than simply rely on Chief Bartels's representations—it dismissed the charge against Mr. Piccone. *See* Dalton MTD Memo, Exh. B.

those decided by the state district court's denial of his motion to dismiss, issue preclusion is not warranted for this reason as well.

**II.     Defendants Bartels and Marley are not entitled to Qualified Immunity for any of the Searches or Seizures they Conducted in this Case.**

Plaintiffs have alleged that the defendants violated their constitutional rights and that those rights were clearly established. A reviewing court must employ a two-step analysis: "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). "The 'clearly established' step of the qualified immunity analysis . . . in turn, has two aspects. One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation . . . The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Ibid.*

A.     *Bartels' Search of Plaintiffs' Home on January 25, 2008 was Unconstitutional (Count I)*

Bartels claims that, at the time he searched plaintiffs' home on January 25, 2008, the law was not clearly established as to whether a *capias* warrant was sufficient for entry into a home to effectuate an arrest. Defendant's claim misses the point. Even assuming a *capias* warrant authorizes entry into the home—a contention Plaintiff does not concede at this stage—there are still limitations as to when or how an officer may enter the home.

Bartels' argument makes presumptions about facts not before this court. It presumes that Bartels had possession of a valid *capias* warrant and that his motive in searching plaintiffs' home was to try and effectuate the warrant. These are factual allegations that plaintiffs contest and,

presuming the facts plead as true, cannot be inferred by this court. That alone should defeat Bartels' assertion. Indeed, the complaint alleges that Bartels conducted a warrantless *search* of the Piccones' house; it makes no claim about whether Bartels had a valid *capias* warrant and what that does or does not authorize. "It is a 'basic principle of *Fourth Amendment* law' that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Beaudoin,* 362 F.3d 60, 65 (1st Cir. 2004) ("A warrantless search involving an intrusion into someone's home is presumptively unreasonable under the *Fourth Amendment*."). Plaintiffs' claim is thus very simple: Bartels conducted a warrantless *search* of their home, *i.e.*, he did not have a warrant authorizing him to *search* their home

However, regardless of the validity of the *capias* warrant, and regardless of whether a *capias* warrant allows for entry into a home, even assuming it does, clearly established law places limitations upon that entry. "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives <u>when there is reason to believe the suspect is within</u>." *Id.* at 603 (emphasis added); *see U.S. v. Pelletier*, 469 F.3d 194, 199 (1st Cir. 2006) (noting that this principle is "black letter law"). Thus, an officer must have reason to believe "the suspect is within" the dwelling before entering. This requirement is not optional. Indeed, it has been the subject of much litigation. *See generally Green v. State*, 78 S.W.3d 604, 611 (Tex. App. 2002) (discussing in great detail the various federal circuits which have addressed this issue).

At least one district court has dealt with this issue and explained the various potential standards the police must follow. *See Solis-Alarcon v. U.S.*, 514 F.Supp. 2d 185 (D.P.R. 2007). The court concluded that, at the very least "in the context of a civil case and for purposes of

determining the application of qualified immunity . . . entry into a residence pursuant to an arrest warrant is permitted when the police have a reasonable belief that the residence is the suspect's dwelling and that <u>he is present at the time of entry</u>." *Id.* at 197, *citing U.S. v. Magluta*, 44 F.3d 1530 (11th Cir. 1995) (emphasis added). In *Solis-Alarcon*, the court was faced with the question of whether the officers were entitled to qualified immunity. While the court granted the defendants qualified immunity, the court was reviewing a motion for summary judgment and, thus, could take into account facts submitted by the defendant. At this stage, this court cannot substitute whatever favorable facts the defendants are attempting to put forward for the facts alleged in the complaint.

Here, the facts alleged clearly show that Bartels did <u>not</u> have reason to believe Mr. Piccone was within the home at the time he entered on January 25, 2008 and yet he searched his residence. None of the Piccones' cars were in the driveway. Bartels and the officers knocked on the Piccones' front and back doors and rang the Piccones' doorbell, but no one answered. Bartels also knew that Mrs. Piccone and the children were not even in Massachusetts. Bartels and the officers did not have a search warrant, nor did they have probable cause to support a warrant if they had sought one. There were no exigent circumstances that would justify a warrantless search of the Piccones' home. The facts, taken as true, demonstrate that Bartels is not entitled to a ruling of qualified immunity at this stage in the litigation.

    B.    *Marley's  Search of Plaintiffs' Home on January 27, 2008 was Unconstitutional (Count III)*

Marley claims his search of Plaintiffs' home on January 27, 208 was valid because he had permission to search from someone who had "apparent authority" to authorize his entrance. In this case, there is no dispute that Marley did not have a warrant; nor does he claim exigent

circumstances justified his search of the plaintiffs' home. Rather, Marley alleges, and the

plaintiffs dispute, that he had consent.

      Legally, Marley is correct that an officer may be immune from liability if he had

permission to enter the home, even if that permission were not given by someone who had

authority to give it, as long as the officer could reasonably believe the permission was valid. *See*

*e.g. Illinois v. Rodriguez*, 497 U.S. 177 (1990). But it is not reasonable for an officer to always

accept that someone who claims to have authority over the residence actually does:

> Law enforcement officers may [not] always accept a person's invitation to enter
> premises. Even when the invitation is accompanied by an explicit assertion that the
> person lives there, the surrounding circumstances could conceivably be such that a
> reasonable person would doubt its truth and not act upon it without further inquiry.
> As with other factual determinations bearing upon search and seizure,
> determination of consent to enter must be judged against an objective standard:
> would the facts available to the officer at the moment . . . warrant a man of
> reasonable caution in the belief that the consenting party had authority over the
> premises?

*U.S. v. Meada*, 408 F.3d 14, 21 (1st Cir. 2005), *quoting Rodriguez*, 497 U.S. at 188.

      Given this standard, Marley's claim is not appropriate at this time because it requires a

factual inference not possible from the complaint. Marley may ultimately claim that it was

objectively reasonable to believe the man he encountered was Mr. Piccone's brother-in-law and

that he, the brother-in-law, had authority to allow him to enter. That claim may ultimately be

believed by a fact-finder. However, Mr. Piccone disputes it and, indeed, in his complaint, sets

out a different set of facts. The complaint makes clear that the man Marley encountered, John

Nolan, was not, and has never been, Mr. Piccone's brother-in-law. Mr. Nolan did not have

authority to grant anyone permission to enter. Marley himself had never met Mr. Nolan and did

nothing to confirm Mr. Nolan was Mr. Piccone's brother-in-law and had authority to grant him

permission—if indeed that is even what happened. Moreover, even if it was reasonable for

Marley to believe the man was Mr. Piccone's brother-in-law, there was no objective reason for Marley to have believed that he resided in the residence and could even consent to a search. This is not a case in which, for example, a spouse or significant other gave consent; brothers-in-law typically do not live with their siblings. At this stage, none of these inferences can be made in favor of Marley when the complaint alleges that his conduct was not reasonable under the circumstances.

C.     *Bartels' Warrantless Seizure and Search of Several Black Bags on February 1, 2008 was Unconstitutional (Count V)*

Bartels claims that the Piccones had no privacy interest in their "trash" and, thus, under the Fourth Amendment, he was free to conduct a warrantless seizure and search of the trash. Generally, persons do not have a privacy interest in garbage disposed of in a place accessible to the public. *California v. Greenwood,* 486 U.S. 35 (1988); *U.S. v. Wilkinson*, 926 F.2d 22, 27 (1st Cir. 1991). The reasoning is simple: "*Greenwood* recognizes that the search of trash left for collection in a public place does not offend societal values." *U.S. v. Scott*, 975 F.2d 927, 929 (1st Cir. 1992). "[A] person who places trash at a curb to be disposed of or destroyed by a third person abandons it." *Ibid.* The reasoning of *Greenwood* and progeny suggest that the most controlling factor is whether or not the person intended to dispose of the items inside the bag.

The deficiency in Bartels' argument is that he presumes plaintiffs' complaint implies that the black plastic bags which they claim Bartels' impermissibly took were garbage or trash. However, there is nothing in the complaint to indicate that is the case. Not everything in a black plastic bag is trash; and not everything in a black plastic bag can reasonably be considered trash. Indeed, according to the complaint, Bartels was put on notice that he did not have permission to be on the property nor that he could seize anything. Bartels was confronted by Mr. Piccone's sister and her boyfriend who both told him he could not take what he was taking. More

importantly, the complaint goes on to allege that Bartels ultimately seized three to seven bags

from the Piccones' home. The allegations, if true, demonstrate that Bartels was not simply

seizing "trash" that the Piccones intended be disposed of. The allegations imply that he had

seized items[4] from the home itself.

> D.   *Bartels' Misrepresentations and Omissions when Applying for a Search Warrant of Mr. Piccone's Luggage was Unconstitutional (Count IX).*

Bartels first claims that Mr. Piccone did not have a reasonable expectation of privacy in

his luggage because he was crossing the United States border. However, Bartels' actions, and the

legal landscape, indicate Mr. Piccone did in fact have a reasonable expectation of privacy.

Congress has the power to regulate and authorize searches and seizures at the border. *See*

*generally U.S. v. Ramsey*, 431 U.S. 606 (1977). But the power is limited: the Fourth Amendment

permits "routine searches and seizures at the border, without probable cause or a warrant, in

order to regulate the collection of duties and to prevent the introduction of contraband into this

country." *U.S. v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). The power to search is

based on the need "to prevent smuggling and to prevent prohibited articles from entry." *Ibid.,*

*quoting U.S. v. Ramsey,* 431 U.S. 606, 618-619 (1977). Anything beyond a "routine" search or

seizure aimed at detecting contraband, however, requires a heightened level of suspicion. Thus,

for example, officials must have an objective and reasonable suspicion to detain someone for

anything more than a routine examination. *See Montoya de Hernandez*, 473 U.S. 531; *Adedeji v.*

*U.S.*, 782 F.Supp. 688, 692 (D. Mass 1992).

Here, it is clear that Bartels did more than conduct a routine border search of Mr.

Piccone's luggage. Indeed, Bartels does not have the authority to do so and the search was

---

[4]    Because the officers were simply carrying bags, and because they claim they ultimately destroyed whatever was in the bags without an inventory, plaintiffs cannot allege what exactly was in the bags. Nevertheless, upon information and belief, plaintiffs believe the officers had taken several documents which they later used as evidentiary support for future legal proceedings. *See* Complaint ¶ 154.

conducted back in Dalton. To the extent Bartels can even claim the power to conduct a routine border search—as opposed to those Congress has explicitly granted authority to, *i.e.* Immigration and Customs Enforcement officials—he relinquished that power when the suitcase left the border. Perhaps most telling was Bartels' own actions. Bartels himself obviously believed that Mr. Piccone had an expectation of privacy because he applied for a warrant before searching the luggage. Thus, clearly, Bartels recognized, and believed, that Mr. Piccone had a privacy interest in the suitcase.

Bartels next argues that, regardless of the privacy interest, he did not omit material information, nor submit false information, in seeking a search warrant. Bartels acknowledges that he could be held liable if he intentionally or recklessly used false statements "to obtain a warrant and the finding of probable cause rests on those false statements." Dalton MTD Memo at. 17, *citing Franks v. Delaware*, 438 U.S. 154 (1978). The appropriate standard is the *Franks* standard: a reviewing court excises the false information, or inserts the recklessly excluded information, and determines whether it would have made a difference in finding probable cause. *See generally Burke v. Town of Walpole*, 405 F.3d 66 (1st Cir. 2005). "Allegations of intentional or reckless misstatements or omissions implicate the very truthfulness, not just the sufficiency, of a warrant application. If such allegations prove to be true, a court owes no deference to a magistrate's decision to issue an arrest warrant because, 'where officers procuring a warrant have deliberately misled the magistrate about relevant information, no magistrate will have made a prior probable cause determination' based on the correct version of the material facts." *Id.* at 82, *quoting Velardi v. Walsh*, 40 F.3d 569, 574 n.1 (2d Cir. 1994).

Bartels was seeking a search warrant for his investigation into whether the Piccones violated G.L. c. 265 § 26A (Kidnapping of a Minor by a Relative). The theory, ostensibly, was

that DCF had obtained a court order for temporary custody of the Piccone children and the Piccones, by not giving DCF custody of the children, essentially "kidnapped" them. Bartels originally applied for an arrest warrant on the same charges and his application for the search warrant stated essentially the same facts (and, in turn, omitted the same information). Thus, the issue is whether Bartels misled the magistrate about whether 1) there was probable cause to believe the Piccones had kidnapped their children and 2) if so, whether evidence of that could be found in Mr. Piccone's luggage.

A parent may lawfully take "his or her children out of the Commonwealth permanently or for a prolonged period in cases in which no court proceeding or custody order exists." *Commonwealth v. Beals*, 405 Mass. 550. 551; 541 N.E.2d 1011. 1012 (1989). In *Beals*, a mother took her children from Massachusetts to Puerto Rico prior to the initiation of any court proceedings. *See*, 405 Mass at 551; 541 N.E.2d at 1012. Ten days after she left, her husband applied for and received temporary custody of their children. *Ibid.* A police officer was unsuccessful in serving Ms. Beals with the order and noted on the return of service that the whereabouts of the mother and children were unknown. *Ibid.* Shortly after, a criminal complaint was issued charging the mother with a felony violation of G.L. c.265 §26A. *Ibid.* The Court dismissed the charges holding that "a parent who has taken his or her children from the other parent before there was any court proceeding cannot be convicted of parental kidnapping under G.L. c. 265 §26A." *Id.*, 405 Mass. at 556; 541 N.E.2d at 1015. The Court also rejected any public policy argument to the contrary stating "the public policy of the Commonwealth in the creation of crimes is not for this court to determine, but for the legislature. As we read G.L. c. 265 §26A, the legislature has not made criminal the act of a parent taking his or her children prior to any court proceeding." *Ibid.*

The law regarding parental kidnapping is thus well settled. Bartels is presumed to be aware of this. Yet, he failed to indicate to the magistrate the essential facts concerning where the Piccone children were and when they got there. Bartels was well aware that before DCF applied for temporary custody, Mrs. Piccone had left Massachusetts with her three children. Bartels also knew that after the order was granted, Mrs. Piccone was never served with it. Thus, not only did she leave the jurisdiction when she was entitled to, once gone, she had no notice that DCF had been granted temporary custody. Given that, there was not probable cause that Mrs. Piccone had committed the crime of Kidnapping; and if she did not commit a crime, Mr. Piccone could not be guilty as a joint venturer. One cannot be in a joint venture to commit innocent conduct.

These facts would have been fatal to the various arrest and search warrant applications. They would have conveyed to the magistrate that, in fact, there was no crime. Thus, the only way Bartels could accomplish what he needed was to omit these facts from the applications. Instead, he sought to make the Piccones look as bad as possible, and minimize any favorable facts, by painting an egregious picture of abuse and neglect. Therefore, Bartels' deliberate omission from the search warrant were clearly unconstitutional.

     E.    *Bartels' Misrepresentations and Omissions when Applying for a Search Warrant of Mr. Piccone's Passport was Unconstitutional (Count XI).*

Bartels alleges that Mr. Piccone did not have a privacy interest in his passport and, thus, he did not even need a warrant to search it. Again, Bartels misses the point of the allegation. Bartels sought access to Mr. Piccone's passport which was being held by the probation office in Berkshire County. When Bartels sought to view the passport, the clerk of the court—who somehow was charged with holding the passport—refused to let him do so without a warrant. Thus, it was not that Bartels had lawful possession of Mr. Piccone's passport and then searched

it, *i.e.* viewed it. Rather, Bartels never had possession and instead had to apply for a warrant to seize it.

Clearly Bartels had no right to seize the passport that was not in his possession without a warrant. This much he acknowledged by actually seeking a warrant. Therefore, because a warrant was required to seize the passport, Bartels is liable if, just like in seeking a warrant for Mr. Piccone's luggage, he recklessly or intentionally omitted material facts or used false statements to obtain the warrant. This argument is already addressed above. *See* Section II(D).

> F.    *Bartels' Misrepresentations and Omissions when Applying for a Search Warrant of the Piccones' e-mail addresses was Unconstitutional (Counts XIII and XV).*

Like the warrants for the luggage and passport, Bartels argues he did not misrepresent anything or omit any material facts in seeking warrants for the e-mail accounts. This argument is addressed above. *See* Section II(D).

## III.  The Town of Dalton is Liable for the Unconstitutional Policies Alleged in the Complaint.

The Town of Dalton argues that it cannot be held liable for Chief Bartels's actions. Dalton MTD Memo at 27-28. This argument ignores the fact that, as Chief of the Dalton Police, Chief Bartels is the policymaker for the Town. *See* Complaint, at ¶¶ 17, 290, 294. Indeed, the First Circuit has expressly rejected this type of argument: so long as the official is the <u>final</u> policymaker for the municipality—as Chief Bartels is in this case—municipal liability can be imposed. *See Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir. 2008) ("We are bound by *Pembaur* [*v. City of Cincinnati*, 475 U.S. 469 (1986)] and conclude that a single decision by a final policymaker can result in municipal liability."). The Town seeks to avoid this result by arguing that it somehow cannot be held liable because "Chief Bartels was acting at all times in the capacity of an investigator." Dalton MTD Memo at 27. It would be anomalous (and unjust) if

the Town could avoid liability because Chief Bartels carried out his own unconstitutional orders rather than ordering an inferior officer do so.  In sum, because Chief Bartels is the chief policymaker for the Dalton Police, the Town is liable for the unconstitutional policies and orders he issues—regardless of who actually carries them out.

**IV.     Plaintiffs Concede they have not Alleged Facts Sufficient to Support Liability Based on the Massachusetts Civil Rights Act ("MCRA")**

Plaintiffs concede that they have not alleged facts that would warrant a finding of liability for the allegations against Bartels, Marley, and the Town of Dalton under the MCRA (Counts II, IV, VI, X, XII, XIV, XVI, and XVIII).  Accordingly, plaintiffs do not oppose dismissal of these counts.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Defendants' Bartels, Marley, and the Town of Dalton's, motion to dismiss.

Respectfully submitted,

LOUIS PICCONE and ELENA PICCONE,

By their attorneys,

/s/ Eric Tennen
Eric Tennen (BBO #650542)
John G. Swomley (BBO # 551450)
Scott A. Katz (BBO # 655681)
SWOMLEY & ASSOCIATES
227 Lewis Wharf
Boston, MA 02110
617.227.9443

Dated:  December 30, 2009

### **Certificate of Service**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, which includes counsel for all Defendants in this matter.

/s/ Eric Tennen            <br>
Eric Tennen