UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LOUIS PICCONE, ET AL.,             )
        Plaintiffs                 )
                                   )
                v.                 )  C.A.  09-cv-30146-MAP
                                   )
ANGELO MCCLAIN, ET AL.,            )
        Defendants                 )


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 8, 15, & 18)

July 2, 2010

PONSOR, D.J.

## I. INTRODUCTION.

Plaintiffs Louis and Elena Piccone ("Plaintiffs"),
filed suit against seven employees of the Massachusetts
Department of Children and Families ("DCF"), Angelo McClain,
Lynne Reber, Joan Mazzeo, Heather Nietsche, Irene Woods,
Lance LaPointe, and Janet Rice (collectively, the "DCF
Defendants"); against John W. Bartels, Jr., the Chief of
Police for the Town of Dalton, John M. Marley, a police
officer with the Dalton Police Department, and the Town of
Dalton (collectively, the "Dalton Defendants"); and against
Richard Smith, a police officer with the Massachusetts State

Police.   In their twenty-nine count complaint, Plaintiffs allege state and federal due process violations, abuse of process, and violations of the Fourth Amendment to the United States Constitution.[1]   Plaintiffs seek damages under 42 U.S.C. § 1983; Mass. Gen. Laws ch. 12, § 11I; and pursuant to common law.   They also seek injunctive and declaratory relief.   (Dkt. No. 1.)   In the motions before the court, the DCF Defendants move to dismiss the claims directed against them under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 8), as do the Dalton Defendants (Dkt. No. 18), and Defendant Smith (Dkt. No. 15).   For the reasons described below, the motion by the DCF Defendants will be allowed, the motion by the Dalton Defendants will be allowed in part and denied in part, and the motion by Defendant Smith will be denied.

II. <u>FACTS</u>.

---

[1] The complaint also alleges that the searches at issue in their Fourth Amendment claims also violated Article 14 of the Massachusetts Declaration of Rights.   However, at oral argument Plaintiffs conceded that the factual allegations do not support state search-and seizure claims.   Thus, only the federal search-and-seizure claims are addressed here.

Viewed in the light most favorable to Plaintiffs, the relevant facts are as follows.

On Friday, January 11, 2008, Defendant Reber received a call in her capacity as intake screener for DCF.  The caller alleged that Plaintiffs' youngest child ("Child C") had made some remarks indicating that Plaintiff Louis Piccone (hereinafter, "Plaintiff" or "Mr. Piccone") had touched him inappropriately. The caller was not a witness to the child's statements.  The caller did not mention Plaintiff's other two children, his wife, Elena Piccone (hereinafter, "Mrs. Piccone"), or any charge of neglect.  Nevertheless, Defendant Reber included in her intake report a charge of neglect against all three children by both parents and designated the complaint an emergency.  (Dkt. No. 1 ¶¶ 25-34.)  Defendant Mazzeo, the program manager, reviewed and approved the intake report. (<u>Id.</u> ¶ 36.)

That same day, on the basis of the intake report, Defendant Nietsche, a social worker, went to Plaintiffs' home with another social worker and two Dalton police officers and requested an interview with Child C (Id. ¶¶ 37,

46.)  Plaintiff agreed to the interview but requested that
it be videotaped.  Defendant Nietsche denied the request and
told Plaintiff that DCF would take immediate physical
custody of all three children unless Plaintiff either
permitted an unrecorded interview or left the house for the
weekend.  At some point in the evening, Defendant Nietsche
spoke with Defendant Wood, who spoke with Defendant
Lapointe, both of whom approved this course of action.
Plaintiff left the house.

On Monday, January 15, 2008, DCF personnel notified
Plaintiff that DCF had scheduled a Sexual Assault
Intervention Network ("SAIN") interview for January 16,
2008.  (Id. ¶¶ 84-85.)  On the afternoon of January 15,
2008, Mrs. Piccone and the three Piccone children left
Massachusetts and went to stay with Plaintiff's parents in
New York city. (Id. ¶ 89.)  Plaintiff remained in
Massachusetts.

On Wednesday, January 16, 2008, Defendant Nietsche
spoke with the Piccone children's regular pediatrician, Dr.
Alan Kulberg, who informed Defendant Nietsche that he had

4

never had any concerns that any of the Piccone children had been abused.  At approximately 1:30 p.m. on the same day, Plaintiff's attorney notified Defendant Nietsche that Mrs. Piccone and the Piccone children were visiting family in New York.

At approximately 3:00 p.m. on the same day, Defendant Nietsche filed an <u>ex parte</u> emergency care and protection petition (the "Petition") with the Massachusetts Juvenile Court, seeking to have DCF take custody of all three Piccone children.  Defendant Rice, a DCF supervisor, cosigned the supporting affidavit, and Defendant LaPointe, the DCF Area Program Manager, approved the course of action.  The Juvenile Court granted the Petition and awarded custody of all three children to DCF.  (<u>Id.</u> ¶ 102.)

Nine days later, on January 25, 2008, Defendant Chief of Police Bartels went to the Piccones' home.  He rang the bell and knocked, but there was no answer.  He then let himself into the house and conducted a warrantless search.

On January 27, 2008, Defendant Police Officer Marley arrived at the Piccones' home, where he spoke with John

Nolan, a former client of Plaintiff.  Nolan (who is not related to Plaintiffs), falsely stated that he was Plaintiff's brother-in-law and that he consented to Defendant Marley's search of Plaintiffs' home.  Defendant Marley entered and searched Plaintiffs' home.

Members of the Dalton Police Department may also have conducted other warrantless searches of Plaintiffs' home. The complaint alleges, "Upon information and belief, on various dates the Dalton Police subsequently conducted seven to ten additional warrantless searches of the Piccones' home."  (Dkt. No. 1, Compl. ¶ 133.)

On January 29, 2008, DCF shared information with the Dalton Police and the Berkshire County District Attorney's Office, and Defendant Bartels applied for and received criminal complaints and arrest warrants against Plaintiffs. The complaints alleged custodial interference by relatives, Mass. Gen. Laws ch. 265, § 26A ("Section 26A").

On February 1, 2008, Defendant Chief of Police Bartels again went to Plaintiffs' home.  Plaintiff's sister and her boyfriend arrived and informed Defendant Bartels that he did

not have permission to be on the property or to remove

anything from the property.  Despite this prohibition, and

without a warrant, Defendant Bartels seized several black

plastic bags that were on the property.

On February 6, 2008, DCF completed its investigation of

the Piccones and concluded that there was insufficient

evidence to make a finding of abuse or neglect based upon

any of the original allegations.  However, in their written

report, Nietsche and Rice concluded that allegations of

neglect against the Piccones were supported because the

Piccones had allegedly failed to make the children available

to DCF for an interview.

At some point between January 15 and February 12, 2008,

Plaintiff traveled to Europe.  On February 12, 2008, he

arrived at Logan International Airport from Paris, France.

He was taken into custody at the airport and held by federal

Immigration and Customs Enforcement ("ICE") agents, who

contacted Defendant Bartels, Chief of the Dalton Police.  On

February 15, 2008, Plaintiff was transported to the

Berkshire County Jail and House of Correction.  His luggage

remained at Logan Airport.

On February 29, 2008, Defendant Richard Smith, a Massachusetts State Police detective, traveled to Boston to take custody of a piece of luggage that Plaintiff had brought with him when he arrived at Logan International Airport on February 12. On or about March 13, 2008, Defendant Bartels applied for and received a search warrant and searched Plaintiff's luggage.

### III. DISCUSSION.

In Counts 21 - 28, Plaintiffs allege that the DCF Defendants violated their right to substantive and procedural due process guaranteed under the Fourteenth Amendment of the United States Constitution and under Articles 1 and 10 of the Massachusetts Declaration of Rights. (Dkt. No. 1.) In Count 29, Plaintiffs also argue that, by instituting proceedings against them, the DCF Defendants committed the common-law tort of abuse of process. (Id.) The DCF Defendants move to dismiss these counts. (Dkt. No. 8.)

In Counts 1, 3, 5, 9, 11, 13, and 15, Plaintiffs allege

that Defendants Bartels and Marley violated Plaintiffs'
rights as guaranteed under the Fourth Amendment to the
Constitution of the United States by (1) conducting
warrantless searches and seizures, and (2) using materially
misleading affidavits in order to obtain search warrants for
Plaintiff's luggage, passport, and e-mail accounts.  In
Count 17, Plaintiffs allege that Defendant Town of Dalton is
liable on a Monell theory for any constitutional violation
committed by Defendant Bartels.  Monell v. Dep't of Social
Services, 436 U.S. 658 (1978).  In Count 19, Plaintiff
alleges that he was falsely arrested by Defendant Bartels.
In Count 20, Plaintiffs allege that Defendant Bartels
committed the tort of malicious prosecution by bringing
against Plaintiffs a criminal complaint alleging violations
of Section 26A.  The Dalton Defendants move to dismiss these
counts.  (Dkt. No. 18.)

In Count 7, Plaintiffs allege that Defendant State
Trooper Smith violated Plaintiffs' Fourth-Amendment rights
when he took custody of Plaintiff's luggage at the airport.
Defendant Smith moves to dismiss this count.

Counts 2, 4, 6, 8, 10, 12, 14, 16, and 18 will be
dismissed by mutual assent of the parties.

A.   The DCF Defendants' Motion to Dismiss (Dkt. No. 8)

Plaintiffs allege that by unjustifiably removing the
children from their parents' "care, custody, and control,"
the DCF Defendants violated their right to substantive and
procedural due process guaranteed under the Fourteenth
Amendment to the Constitution of the United States and under
Articles 1 and 10 of the Massachusetts Declaration of
Rights.   (Dkt. No. 1 ¶¶ 311 et passim.)   Pursuant to 42
U.S.C. § 1983 ("Section 1983") and Mass. Gen. Laws ch. 12, §
11I ("Section 11I"), they seek damages from Defendants
Reber, Mazzeo, Nietsche, Woods, LaPoint, and Rice.
Plaintiffs also seek to have the record of the neglect
finding expunged.   (Dkt. No. 1 at 55.)   This request for
injunctive relief is directed at Defendant McClain, the
Commissioner of DCF, from whom Plaintiffs do not seek
damages.

The DCF Defendants argue that, as state employees
engaged in a discretionary function and acting in their

official capacities, they are entitled to qualified immunity

from actions for damages.  They also argue that no

unconstitutional deprivation of a protected interest

occurred and that the alleged conduct is not actionable

under Section 11I.

    1.   Section 1983 Claims (Counts 21, 23, 25, 27)

The DCF Defendants argue that all counts against them

should be dismissed because they enjoy both absolute and

qualified immunity from damages.  Because the court will

find that qualified immunity applies, this memorandum will

not reach the issue of absolute immunity.

The First Circuit has a two-part test for determining

entitlement to qualified immunity.  A court must determine

(1) whether the facts alleged or shown by the plaintiff make

out a violation of a constitutional right; and (2) if so,

whether the right was "clearly established" at the time of

the defendant's alleged violation.  Maldonado v. Fontanes,

568 F.3d 263, 269 (1st Cir. P.R. 2009).  A right is clearly

established if "the state of the law at the time of the

alleged violation gave the defendant fair warning that his

particular conduct was unconstitutional."  Id.  This inquiry

involves both a legal and a factual component.  For the

right at issue to be clearly established, the state of the

law must be clear and the facts must clearly implicate the

right at issue.

　　With respect to Defendants Reber and Mazzeo, the

federal counts (Counts 21, 23, 25, and 27) will be

dismissed.  Their participation in the events at hand was

limited to making, filing, and reviewing an arguably flawed

intake report.  The court cannot find that they infringed

any "clearly established" constitutional right by doing so.

　　With respect to the other DCF Defendants, the federal

counts will be dismissed because there was no deprivation of

a protected interest; in other words, there was simply no

violation of a constitutional right as required by the first

prong of Maldonado's qualified immunity analysis.  The

protected liberty interest identified here, with respect to

both substantive and procedural due process claims, is the

interest of parents in the care, custody and control of

their children.  See Hatch v. Department for Children, Youth

12

and Their Families, 274 F.3d 12 (1st Cir. 2001) (interest of parents in the care, custody and control of their children is a protected liberty interest).  The gravamen of Plaintiffs' complaint is that the state attempted to gain physical custody of the children but was ultimately thwarted in that attempt.

Plaintiffs have offered no authority, and this court is aware of none, for the proposition that a deprivation of the parents' interest in the "care, custody, and control" of children may occur when the state is thwarted — that is, when the parents experience no interruption in physical custody because the state is unable or unwilling to physically remove the children from their care.

The complaint itself confirms that the Piccone children remained in their mother's care throughout DCF's investigation. Mrs. Piccone therefore experienced no deprivation of custody, unconstitutional or otherwise.  Mr. Piccone chose to remove himself from the companionship of his family on January 11, 2008, in response to the investigator's insistence that he permit an interview of his

13

child without videotaping or, alternatively, agree to leave

the house over the weekend.  Obviously, a condition of that

kind is not equivalent to taking a child away from a parent.

In sum, as distressing as the situation may have been, he

suffered no unconstitutional deprivation of his right to the

care and custody of his children.

For these reasons, the court will dismiss Counts 21,

23, 25, and 27 in their entirety and against all Defendants.

2.   Section 11I Claims (Counts 22, 24, 26, 28)

To establish a claim under Mass. Gen. Laws ch. 12, §

11I, a plaintiff must prove a deprivation or attempted

deprivation of a protected right by "threats, intimidation

or coercion."  Swanset Dev. Corp. v. City of Taunton, 668

N.E.2d 333, 395 (Mass. 1996).  Plaintiffs allege that, upon

being notified of potential child abuse, DCF workers stated

that they would attempt to remove the child from his

father's care if he did not permit an interview to take

place without videotaping.  Plaintiffs argue that this

"threat" is actionable under Section 11I.

In general, the stated intention to bring lawful

14

process is not coercive for purposes of Section 11I.  See
Stephens v. Exec. Office of Health & Human Servs., No.
01-P-903, 785 N.E.2d 427 (table),  2003 WL 1477786, at *3
(Mass. App. Ct. March 24, 2003) ("It is not an improper
threat for a State official merely to express an intention
to bring a petition under G.L. c. 119, § 24, to obtain
custody of a child if, in the official's judgment, such a
petition is warranted.").  Lawful process may become
intimidating or coercive if undertaken in an intimidating
way.  Reproductive Rights Network v. President of the Univ.
of Mass., 699 N.E.2d 829, 939-40 (Mass. App. Ct. 1998)
(finding university's use of uniformed police officers to
close a building and thereby cancel a political meeting
coercive).  However, there are no indicia of intimidation
here.  The DCF investigators merely insisted on an
opportunity to interview the child, following a reported
allegation of abuse, without videotaping.  Plaintiffs'
situation might raise concerns, but the facts alleged are
simply insufficient to provide grounds for Section 11I
liability.

3.   Defendant McClain.

Plaintiffs also request an injunction ordering
Defendant McClain to cause DCF to expunge certain records.
(Dkt. No. 1, Compl. p. 55, ¶ E.)  Because the court finds
that the DCF Defendants did not effect the deprivation of
any protected right, there is no basis on which the
requested injunctive relief could be ordered.

4.   Abuse of Process Claims (Count 29)

Plaintiffs argue that, by instituting proceedings
against them, Defendants committed the common-law tort of
abuse of process.  To prevail on this claim, Plaintiffs must
show that Defendants used the process "to accomplish some
ulterior purpose for which it was not designed or intended."
Interface, Inc. v. Computerworld Inc., 489 N.E.2d 185, 195
(Mass. 1986).  The essential elements of abuse of process
are "(1) 'process' was used; (2) for an ulterior or
illegitimate purpose; (3) resulting in damage."  Id.  See
also Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552,
563 (Mass. 2002).  Defendants argue that Plaintiffs have
failed to allege cognizable ulterior or illegitimate

16

purpose.

Plaintiffs argue that they have alleged a retaliatory
purpose stemming from Plaintiff's work assisting in the
defense of a day care center in Pittsfield and his stated
intention to file suit against DCF.  The cited portion of
the Complaint provides as follows: (1) that Plaintiff began
assisting another attorney to defend a certain day care
center against allegations of child neglect made by the
Massachusetts Department of Early Education and Care (the
"EEC"); (2) that Defendant DCF receives and investigates
reports from the EEC; (3) that Plaintiff informed the
general counsel of the EEC that the lawsuit would challenge
the constitutionality of Mass. Gen. Laws. Ch. 119, §§ 51A
and 51B, under which both DCF and the EEC operate; and (4)
that the call alleging abuse of Plaintiff's son was made one
week later.   (Dkt. No. 1, Compl. ¶¶ 22-25.)

Plaintiffs argue that these allegations "imply that DCF
was retaliating against [Plaintiff] in an effort to
intimidate him to refrain from suing them." (Dkt. No. 40 at
23.)  The claim of alleged causation offered in the

complaint is simply too tenuous to avoid dismissal.  In

essence, the complaint charges that the employees of one

agency initiated a child-neglect investigation because an

attorney had expressed his intention to lend his assistance

to another attorney's defense of another party accused by a

separate, independent agency.  The only allegation offered

in support of this claim is that the first agency began its

investigation a week after learning of the attorney's

involvement in the separate law suit involving the second

agency.  As noted, the chain of causation is simply too

attenuated and unsupported to ground a claim of ulterior

purpose.  Count 29 will therefore be dismissed.

B.   The Dalton Defendants' Motion to Dismiss (Dkt. No. 18)

Plaintiffs allege that the Dalton Defendants violated

Plaintiffs' rights as guaranteed under the Fourth Amendment

to the Constitution of the United States by (1) conducting

warrantless searches and seizures and (2) using materially

misleading affidavits in order to obtain search warrants for

Plaintiff's luggage, passport, and e-mail accounts.

Plaintiffs also allege that the Town of Dalton is liable on

a <u>Monell</u> theory for any constitutional violation(s) committed by Defendant Bartels.  <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658 (1978).  Plaintiffs seek damages pursuant to Section 1983.[2]

The court will find that the claims based on the warrantless searches are actionable and will deny the Dalton Defendants' motion to dismiss with respect to such claims. Likewise, the court will not dismiss the malicious prosecution claim.  However, the court will dismiss the false arrest claim and all claims arising from the searches made pursuant to a valid warrant.

1.   <u>Liability of Defendants Bartels and Marley for Warrantless Searches (Counts 1, 3, 5)</u>.

Plaintiffs allege that on January 25 and 27, 2008, Defendant Police Chief Bartels and Defendant Police Officer Marley entered and searched Plaintiffs' home without a warrant and without consent.  Plaintiffs also allege that, on February 1, 2008, Defendant Bartels removed black plastic bags containing unknown items from Plaintiffs' property

---

[2]   Plaintiffs no longer seek damages from the Dalton Defendants pursuant to Section 11I.  <u>See</u> footnote 1, above.

Case 3:09-cv-30146-MLW Document 44 Filed 07/02/10 Page 20 of 35

without a warrant and without permission. Defendants argue
that the officers in question are entitled to qualified
immunity for any liability otherwise arising from their
actions.

With respect to the first search (Count 1), Defendants
argue that Defendant Bartels enjoys qualified immunity for
his actions because there was an outstanding <u>capias</u> warrant
for Plaintiff and the law prohibiting a search in such
circumstances was not "clearly established" as required in
<u>Maldonado</u>, 568 F.3d at 269. For their argument that the law
on this issue was unsettled at the time of the search,
Defendants cite <u>Malek v. Knightly</u>, No. 94-2113, 56 F.3d 59,
1995 U.S. App. LEXIS 13924 (1st Cir. 1995). In <u>Malek</u>, the
First Circuit declined to determine "whether a bench warrant
for civil contempt authorizes entry into the arrestee's home
to effect the arrest." <u>Id.</u> at *2. From this, Defendants
argue that Defendant Bartels was conducting himself in an
uncertain area of the law defining whether the <u>capias</u>
entitled him to enter and search the Piccones' home.
However, Defendants cite no case (and this court is aware of

none) indicating that a <u>capias</u> warrant gives the government
the right to enter the arrestee's home for any other
purposes than to affect the arrest.  Whatever he may have
thought about his authority to enter the home and effect an
arrest, the law clearly prohibited Defendant Bartels from
conducting a warrantless search.  Accordingly, he does not
enjoy the protections of qualified immunity with respect to
Count 1.

With respect to the second search (Count 3), Defendants
argue that an individual plausibly identifying himself as
Plaintiff's brother-in-law consented to the search, which
was therefore lawful under the "apparent authority"
rationale.  <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 186
(holding that there is no violation of the Fourth Amendment
when the government reasonably believed that the individual
giving consent to the search had authority to do so) (citing
<u>United States v. Matlock</u>, 415 U.S. 164, 172 (U.S.
1974)(holding that a third party has authority to consent to
a search if the third party is a "co-inhabitant")).  <u>See</u>
<u>also</u> <u>U.S. v. Romain</u>, 393 F.3d 63, 69, n.2 (1st Cir. 2004)

(apparent authority to consent to a search is sufficient if the officer's reliance on the apparent consent is reasonable).  In this case, Defendant Bartels appears to have assumed that, if an individual was the property owner's brother-in-law, the individual was a co-inhabitant or exercised similar control over the premises.  Defendants do not explain how this assumption was reasonable and, at this early stage of the case, no conclusions may be drawn on this point.  Count 3 will not be dismissed.

With respect to the third search (Count 5), Defendants note that the government may search garbage within the curtilage of a home.  U.S. v. Scott, 975 F.2d 927 (1st Cir. 1992).  Defendants argue that this count should be dismissed because Plaintiffs have failed to allege that the plastic bags in question were not garbage bags located within the curtilage of Plaintiffs' home.  Plaintiffs are not required to anticipate potential defenses in their complaint.  These facts may be explored in discovery.  Count 5 will not be dismissed.

　　2.   Liability of Defendant Bartels for Searches

### Pursuant to Allegedly Invalid Warrants (Counts 9, 11, 13, and 15)

Plaintiffs allege that Defendant Bartels used intentionally misleading affidavits in order to obtain search warrants for Plaintiff's luggage, passport, and e-mail accounts.  A warrant that issues without probable cause is invalid and, as a matter of law, a warrant containing misinformation is invalid if the misinformation was necessary to establish probable cause.  Aponte Matos v. Toledo-Davila, 135 F.3d 182, 187 (1st Cir. 1998) (citing Franks v. Delaware, 438 U.S. 154, (1978)).

Plaintiffs allege that the affidavits contain numerous misstatements and material omissions.  For example, with respect to the affidavit's statement that the Piccones' house was in disarray, but Plaintiffs allege that "in fact it was clean and neat."  (Dkt. No. 1, Compl. ¶ 174.) Similarly, Plaintiffs allege that the affidavits misrepresented the basis for the DCF's finding of neglect. However, none of the alleged misrepresentations or omissions was material to the finding of probable cause.  The warrant

was therefore valid, and Counts 9, 11, 13, and 15 will

therefore be dismissed.

   3.   Liability of Defendant Town of Dalton for Actions
        by Defendant Bartels (Count 17).

   Plaintiff allege that Defendant Town of Dalton is

liable for harm resulting from any unconstitutional searches

committed by Defendant Chief of Police Bartels.  Municipal

liability may be imposed "for a single decision by municipal

policymakers under appropriate circumstances."  Welch v.

Ciampa, 542 F.3d 927, 942 (1st Cir. 2008), quoting Pembaur

v. City of Cincinnati, 475 U.S. 469, 480 (1986).  Such

liability attaches where "the decisionmaker possesses final

authority to establish municipal policy with respect to the

action ordered."  Pembaur, 475 U.S. at 481.  Plaintiffs

argue that Monel liability attaches because Defendant

Bartels, as Chief of Police for the Town of Dalton, had

final decision-making authority with respect to the searches

at issue.

   Defendants argue that, because Bartels was acting as a

police officer rather than in his decision-making capacity

as police chief, any alleged constitutional violations
cannot result in the imposition of liability on the
municipality.  This argument is not persuasive.  Regardless
of how Defendant Police Chief Bartels understood his
function when he entered Plaintiffs' house, the fact remains
that he was the Town of Dalton's final word on the scope of
Plaintiffs' Fourth Amendment rights.  Plaintiffs are free to
argue that he retained that authority whether he was
investigating crime himself or supervising subordinate
officers.  Since his actions may trigger <u>Monell</u> liability,
Count 17 cannot be dismissed.  Plaintiffs, at a minimum, are
entitled to develop their case through discovery.

    4.   <u>Malicious Prosecution (Count 19)</u>

    Both Plaintiffs assert malicious prosecution claims
against Defendant Bartels for his role in bringing criminal
complaints against them.  The elements of malicious
prosecution are "(1) the institution of criminal process
against the plaintiff with malice; and (2) without probable
cause; and (3) the termination of the criminal proceeding in
favor of the plaintiff."  <u>Gutierrez v. Mass. Bay Transp.</u>

Auth., 772 N.E.2d 552, 561 (Mass. 2002). Defendants do not

contest that Plaintiffs have adequately pleaded the first

and third elements of the tort.  They argue that the claim

should be dismissed because (1) Defendant Bartels had

probable cause to initiate proceedings against the Piccones

and, (2) Plaintiff is collaterally estopped from disputing

the probable cause issue because the Massachusetts District

Court of Pittsfield found that probable cause existed to

bring the complaint.

     a.   Probable Cause.

     Defendants argue that the malicious-prosecution claim

must be dismissed because Defendant Bartels had probable

cause to seek the criminal complaint.  Section 26A

criminalizes "[holding] or [intending] to hold . . . a child

permanently or for a protracted period" without lawful

authority and "[taking] or [enticing] such a child from his

lawful custodian."  Defendant Bartels had probable cause to

bring the complaint under Section 26A if he reasonably

believed that Plaintiffs had taken or were holding the

children without lawful authority.

The face of the complaint confirms that probable cause to charge Mrs. Piccone existed at the time the criminal complaint issued.  Of course, the act of "taking" the children to New York before DCF sought custody was insufficient grounds for the charge.  A parent does not commit custodial interference by taking exclusive possession of a child where no custody order has issued.  <u>See</u> <u>Commonwealth v. Beals</u>, 541 N.E.2d 1011, 1013 (Mass. 1989). Likewise, a parent does not commit custodial interference by holding a child in violation of a custody order of which he or she has no actual notice.  <u>Id.</u> at 1012 (noting that the defendant had no knowledge of the custody order when she continued to hold her children in Puerto Rico).  However, if Defendant Bartels had reasonable cause to believe that Mrs. Piccone was holding the children in New York in <u>knowing</u> violation of a custody order, then he had probable cause to charge her, even if the order issued after she first took the children to New York.

At the time he sought the complaint, Defendant Bartels knew that Mrs. Piccone was in New York with the children.

To conclude that she knew about (and was intentionally flouting) the custody order, he merely had to assume that she was in communication with her husband, who was himself aware of the order.  These are reasonable assumptions. Plaintiffs were not estranged or engaged in a dispute over the children, and a husband would ordinarily tell his wife important information of that nature.  Defendant Bartels may have drawn a mistaken conclusion, but he had probable cause to draw the conclusion he did.

The arrest and prosecution of Plaintiff is another matter.  Section 26A criminalizes holding or taking children from their lawful custodian.  In support of their motion to dismiss, Defendants do not explain how Defendant Bartels concluded that, during the relevant period, Plaintiff had physical access to his children, much less the physical control necessary to "hold" or "take" them.  According to the complaint, Defendant Bartels knew that the children were in New York while Plaintiff was in Massachusetts.  On these facts, the claim that Defendant Bartels lacked probable cause to make a criminal complaint is at least facially

cognizable.

      b. <u>Collateral Estoppel</u>.

For issue preclusion to apply, three elements must be met: (1) the issue must be actually litigated, (2) there must be a full and final judgment, and (3) the determination must be essential to the judgment. A judgment is not "final" for this purpose unless it can be appealed. <u>Jarosz v. Palmer</u>, 766 N.E.2d 482, 486 (Mass. 2002).

The Massachusetts District Court dismissed the criminal complaint against the Piccones on their motion to reconsider, finding that the Commonwealth would be unable to meet its burden of proof. (Dkt. No. 20, Ex. B, December 22, 2008, Mem. of Decision and Order on Def.'s Mot. to Dismiss in <u>Commonwealth v. Louis A. Piccone</u>, Pittsfield District Court Docket No. 0827CR215.) Before dismissing the complaint, however, the court found that Defendant Bartels had probable cause to initiate the proceedings against both parents. (Dkt. No. 20, Ex. A, July 25, 2008, Mem. of Decision and Order on Def.'s Mot. to Dismiss in <u>Commonwealth v. Louis A. Piccone</u>, Pittsfield District Court Docket No.

29

0827CR215.)  That specific factual finding was never reversed or overruled, and Defendants argue that it precludes Plaintiffs from claiming here that the charges were brought without probable cause.

This argument is unpersuasive because, in this case, the July 25, 2008 decision never became appealable.  A Massachusetts District Court's decision not to dismiss a criminal complaint is not appealable unless the defendant is ultimately convicted.  Commonwealth v. Jackson, 770 N.E.2d 469, 470 (Mass. 2002).  In addition, the determination regarding probable cause was not essential to the judgment dismissing the case.  For these reasons, the malicious prosecution claim brought by Mr. Piccone cannot be dismissed on the ground of issue preclusion.

For the foregoing reasons, Count 19 will be dismissed with respect to Mrs. Piccone but not with respect to Mr. Piccone.

### 5.   False Arrest (Count 20)

Plaintiff has alleged that his arrest on February 12, 2008, constituted a false arrest for which Defendant Bartels

30

is liable under Section 1983.  If an arrest is made pursuant to a warrant that appears proper and valid on its face, the officer making the arrest is permitted to rely on the warrant.  See Massachusetts Practice § 10.9 (2009).  See also Lombard v. Salisbury Police Dep't, 4 Mass. L. Rep. 255, 1995 Mass. Super. LEXIS 411, at *9 (Mass. Super. Ct. 1995) ("An arrest or confinement warranted by law cannot constitute the tort of false imprisonment or false arrest.").  Defendant Bartels acted pursuant to a valid warrant.  Count 20 will therefore be dismissed.

C.   Defendant Smith's Motion to Dismiss Count 7 (Dkt. No. 15)[3]

It is uncontested that on February 29, 2008, Defendant State Trooper Smith took custody of Plaintiff's luggage, which had remained at the airport following his February 12 arrest.  (Dkt. No. 1, Compl. ¶ 169.)  Plaintiffs allege that, by doing so, Defendant Smith violated Plaintiff's rights as guaranteed under the Fourth Amendment to the

---

[3] Plaintiffs do not contest Defendant Smith's motion to dismiss Count 8, the Section 11I claim associated with the same conduct.  See footnote 1, above.

Constitution of the United States.

Defendant Smith argues that any seizure of Plaintiff's bags occurred weeks earlier, when Federal Immigration and Custom Enforcement ("ICE") agents took possession of the luggage incident to Plaintiff's arrest. (Dkt. No. 16, Defendant Richard Smith's Mem. of Law in Supp. of Mot. to Dismiss 10.) He therefore contends that either (1) his act did not constitute a civil rights violation because another government agent had already seized the bags or (2) he enjoys qualified immunity because he reasonably believed that the bags were already in possession of government agents.

With respect to the first argument, the only evidence currently before the court regarding the chain of custody of Plaintiff's luggage consists of an affidavit by Defendant Bartels (the "Bartels Declaration"), which he submitted in support of a search warrant. (Dkt. No. 16, Ex. 1.) The Bartels Declaration lays out the following facts: (1) Plaintiff was arrested on February 12, 2008 (Id. ¶ 9); (2) on February 13, 2008, the luggage in question was in a

32

location called "Troop F barracks" of Logan airport (Id. ¶
13); (3) on February 13, 2008, ICE Agents and Massachusetts
State Troopers searched the luggage without a warrant (Id.);
(4) on February 29, 2008, Defendant Smith took possession of
the luggage on behalf of the Commonwealth; and (5) the
luggage "had been secured at the time of [Plaintiff's]
arrest" (Id. ¶ 14).   The Bartels Declaration does not
clearly identify who had possession of the luggage during
the critical period between the February 12 arrest and the
February 29 seizure.

     With respect to the second argument asserting qualified
immunity, Defendant Smith has not submitted any evidence as
to his understanding of the custody of the luggage on
February 29, 2008.   There is no declaration from Defendant
Smith, and the Bartels Declaration is silent as to Defendant
Smith's beliefs.

     Admittedly, Defendant Smith's position is sympathetic.
It appears quite possible that he merely transported an item
already seized by another party.   Any damage suffered as a
result of this action is difficult to discern.

Nevertheless, at this stage, before discovery has taken place, the court cannot dismiss the complaint on the basis of the moving party's attorney proffer.  There is not enough evidence for the court to conclude either that ICE had possession of the bags on February 29, 2008, or that Defendant Smith believed that the bags had already been seized.  Accordingly, Count 7 will not be dismissed.

### IV.  CONCLUSION.

For the foregoing reasons, the DCF Defendants' Motion to Dismiss Counts 21 - 29 (Dkt. No. 8) is hereby ALLOWED. This ruling eliminates the DCF Defendants from the case entirely.

The Dalton Defendants' Motion to Dismiss Counts 1 - 6 and 9 - 20 (Dkt. No. 18) is hereby ALLOWED with respect to Counts 2, 4, 6, 9-16, 18, and 20.  It is DENIED with respect to Counts 1, 3, 5, and 17.  It is ALLOWED, in part, and DENIED, in part, with respect to Count 19.

Defendant Smith's Motion to Dismiss (Dkt No. 15) is hereby ALLOWED as to Count 8 but DENIED as to Count 7.

This case is hereby referred to Magistrate Judge

34

Kenneth P. Neiman for a pretrial scheduling conference.

It is So Ordered.

_Michael A. Ponsor_

MICHAEL A. PONSOR
U. S. District Judge